EPHRAIM HAINS v. HORACE HAINS ET AL.

*Contract for purchase of lands—Recording laws—Good-faith purchaser—Notice.*

In this case the appellant, Horace Hains, is found to have had *knowledge* of the existence of complainant's contract, and to have taken his deed from *their* father subject thereto, and the decree below, directing specific performance of said contract, is affirmed. The case is one *purely* of fact.

Appeal from Livingston. (Newton, J.)   Argued April 6, 1888.   Decided April 20, 1888.

Bill filed to enforce specific performance of contract. Defendant Horace Hains appeals. Decree below granting relief prayed for affirmed. The facts are stated in the opinion.

*Henry C. Van Atta* and *Rollin H. Person*, for complainant.

*Watson & Chapman*, for appellant, Horace Hains.

LONG, J.   The bill was filed in this cause in the circuit court for the county of Livingston, in chancery, for the specific performance of the following contract:

"Articles of agreement made this twenty-second day of August, in the year of our Lord one thousand eight hundred and seventy-three, between Elihu Hains, of Hartland,

county of Livingston, State of Michigan, of the first part, and Ephraim E. Hains, of the same place, the party of the second part, in the manner following:

"The. said party of the first part, in consideration of the sum of one hundred dollars to him duly paid, and the cove-- nants and agreements hereafter mentioned, hereby agrees to sell unto the said party of the second part the following described lands, situated in the town of Hartland, county of Livingston, State of Michigan, known, bounded, and described as follows, to wit: The north-east quarter ($\frac{1}{4}$) of the south-east quarter ($\frac{1}{4}$) of section nineteen (19), also five acres' of land in the north-east corner of the west half ($\frac{1}{2}$) of the south-east quarter ($\frac{1}{4}$) of said section nineteen (19),—all in township three (3) north, of range six (6) east, containing in all forty-five (45) acres of land, be the same more or less,— for the sum of one hundred dollars ($100), which the said party of the second part hereby agrees to pay the party of first part, as follows: To pay the said sum of one hundred dollars ($100) on the signing of this contract; also to give the party of the first part the use and control of the above-described lands during the natural life of the aforementioned Elihu Hains; and at his decease, the heirs, administrators, executors, and assigns are to make and execute to the said Ephraim E. Hains a good and. perfect title to the above described lands.

"And the said party of the first part on receiving such pay-ment, and having the possession as above stated, at the time and in the manner above mentioned, shall, at his own proper cost and expense, execute and deliver to the said party of the second part, or to his assigns, a good and perfect title to the above-described lands and premises, to be executed by the legal representatives of the said party of the first part at the decease of the said Elihu Hains.

"It is mutually agreed between said parties that the said party of the first part shall have possession of said premises until the decease of the said Elihu Hains.

"And it is agreed that the stipulations aforesaid are to apply to and bind the heirs, administrators, executors, and assigns of the respective parties. In witness whereof the said parties have hereunto set their hands and seals the day and year above written.　　　　　ELIHU HAINS.　[L. S.]
"EPHRIAM HAINS.　[L. S.]

"Sealed in the presence of
"Charles H. Fralick.
"H. C. Hause."

Elihu Hains was the father of complainant, and was unmarried at the time of its execution and delivery. The contract bears the following indorsement:

"Received, Brighton, August 22, A. D. 1873, on the within contract, the sum of one hundred dollars ($100),—the payment within mentioned.                ELIHU HAINS."

After the making of this contract Elihu Hains remarried, and before the commencement of this suit died.

The defendant Belle Hains is the widow of Elihu Hains, deceased, and the other defendants are brothers and sisters of complainant, and children and heirs at law of Elihu Hains, who died intestate.

Process of subpœna was served upon all the defendants, and the bill is taken as confessed against all of said defendants except Horace Hains, who appeared in the cause and answered the bill.

The defendant by his answer claims that on the twentieth day of February, 1883, the said Elihu Hains conveyed by warranty deed to the defendant the north-east quarter of the south-east quarter of section 19, township number 3 north, of range 6 east,—being the 40 acres of land described in said contract to complainant; and that said deed was duly recorded in the office of the register of deeds of the county of Livingston.

Defendant denies by his answer that he had any knowledge of the existence of complainant's contract at the time of the delivery to him of his deed, but he admits that he had heard at one time, and before the delivery to him of said deed, that Elihu Hains had made some kind of a contract with complainant in reference to the lands mentioned in complainant's bill; that defendant made inquiry in reference thereto, and particularly of Elihu Hains, who was at that time in possession of the premises, and that Elihu Hains then told him the complainant had no claim or interest in

the 40 acres of said land, and that whatever interest he ever had therein had been forfeited, and that complainant's claim had been removed and canceled; and that defendant, relying upon said statement, made said purchase, and paid $600 for the same, and placed his deed on record.

He also avers that he caused the records in the office of the register of deeds of said county to be examined, and found no claim against said land of record.

The cause came on for hearing in said court on pleadings and proofs taken in open court, and said court made a decree and order in the case that the complainant have specific performance of the contract set forth in the bill, and that the defendants, William Hains, Henry Hains, Horace Hains, Sarah Briggs, Lucinda Peterson, Eliza Briggs, Clarissa Kirk, and Belle Hains, heirs at law and widow of Elihu Hains, deceased, convey, by good and sufficient deed or deeds, to the complainant, the following described land, in pursuance of said contract made by said Elihu Hains in his life-time to complainant, to wit: Five acres of land in the north-east corner of the west half of the south-east quarter of section 19, township 3 north, of range 6 east, in said county; and that Horace Hains, who received from Elihu Hains in his life-time a deed of a portion of the lands conveyed by, and described in, said contract, with full knowledge of said contract, and of all complainant's rights and equities therein, and who therefore holds said lands as trustee of said complainant under said contract, convey to 'complainant, by a good and sufficient deed, within 30 days from the filing of this decree, the following described lands, to wit: the north-east quarter of the south-east quarter of section 19, township number 3 north, of range 6 east, in said county.

This decree also provides that, upon failure of the defendants to make such conveyances, the decree may be recorded in the office of the register of deeds of said county, and stand

as a full and complete conveyance of said premises to complainant.

From this decree defendant Horace Hains appeals to this Court.

Upon the hearing of the cause in the court below, proof was given of the execution and delivery of the contract above set forth, and of the payment of the $100, indorsed thereon. This was not contradicted, or in any manner denied, by defendant, and the only question of fact in dispute upon the hearing was, did the defendant Horace Hains have knowledge of the existence of this contract at and before the time of the purchase made by him, and the taking of this deed from his father?

The complainant testifies that in 1883, and prior to the date of defendant's deed of the 40 acres from his father, he had a talk with Horace about this contract, and in answer to the following question said:

" *Q.* What was the talk between you and him?
"*A.* Well, we talked of trading. I learned he was going on the place, and I says, ' Horace, you are going on the place; let us make a trade. I will give you my contract for your place in Hartland.' He says, ' I don't know. I never saw your contract.' I says, ' To-night, when we get through threshing, I will go down, and fetch it back in the morning, then you can see it.' So I went down there, and got the contract, and went back in the morning, and when I got there they were about ready to thresh, and we went to threshing; and that night, as we started home, I pulled out the contract, and says, ' Horace, here is my contract.' He took it, and read it, and said he would trade as soon as he got the papers made out to work the place. He read the contract all through."

Complainant also gave testimony showing that at the time of the making of the contract his father was unmarried, and that he lived with him, and worked the farm which his father owned, a short distance from the land in controversy, and upon which his father lived; that sometime subsequently his

father remarried, and trouble arose between himself and father, when he proposed leaving home; and then offered to surrender the contract, and receive back his money paid thereon, but that his father refused to pay the money, or receive back the contract, telling complainant to keep it, as some day it would make him a good home. Complainant left home, and afterwards worked for himself, and defendant Horace Hains worked the father's farm.

The complainant continued to live near his father, and in the same neighborhood. The complainant is corroborated by other witnesses as to Horace's knowledge of the existence of the contract before he took his deed, and the circumstances surrounding the case show most conclusively that fact.

The defendant, however, denies that he knew that the contract was in existence, but claims that he asked his father about it, and was told by him that complainant had forfeited all his rights under it, and that it had been canceled; that he also went to the office of the register of deeds of the county, and did not find it of record, and therefore believed complainant had no claim on the premises. It appears from his own testimony that on his way home from the register's office he passed by where his brother, the complainant, was, and talked with him, but made no inquiry of him as to any interest he had in the premises, or concerning the contract. It is evident, from his whole testimony, that he was acting under the belief that, inasmuch as the contract was not made of record in the office of the register of deeds, as matter of law he could place his deed upon record, and thus cut off any rights his brother might have in the premises.

The contract contained no certificate of acknowledgment, and was not entitled to be recorded, but this could not affect complainant's rights as against one who had actual knowledge of the fact of its existence and terms, and the rights which complainant claimed in the premises.

The contract was one which the complainant had a right to have performed by the heirs of Elihu Hains, and the defendant Horace Hains, under the proofs made in this case, cannot be held to be a *bona fide* purchaser. He knew of the execution of the contract, and of its delivery to the complainant, and whatever Elihu Hains said as to its being forfeited and canceled could in no manner affect complainant's rights.

If defendant had been acting in good faith in the transaction, while he was making an effort to ascertain if the title was clear, and what rights complainant had, if any, he would have made inquiry of the very person who could have given him the information he was seeking. This he did not do, though on the very day he was making the purchase he met and talked with complainant.

It is not necessary to consider the doctrine of constructive notice in disposing of this case. A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. *Mayor of Baltimore v. Williams*, 6 Md. 235.

If one has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making, such inquiries, he must be taken to have notice of those facts which, if he had used such ordinary diligence, he would have readily ascertained. *Whitbread v. Boulnois*, 1 Younge & C. 303; *J., L. & S. R. R. Co. v. Davison*, 65 Mich. 417 (head-note 2), 437.

He is bound to inquire of the party in interest if he has knowledge or information that another is making a claim. *Converse v. Blumrich*, 14 Mich. 120.[1]

It is claimed by defendant's counsel that complainant has forfeited his contract by leaving home, and failing to work

[1]See on *this* point, *Millar & Co. v. Olney, ante,* 560 (head-note 1).

his father's farm, and that that was one of the conditions upon which the contract was made and delivered to him.

There is no such stipulation in the contract, and, if any such agreement was made, it is no part of the contract which this action is brought to enforce.

All of the conditions of the contract had been fulfilled by the complainant, and we cannot inquire into the fact whether it is such a one as Elihu Hains ought to have made.

The fact that the land was of the value of $2,000 could in no manner affect the right of the complainant to have it enforced. It was made by the father to his son, who was living at home with him, and whom he was desirous of aiding, and, if the testimony of complainant is true, when complainant left home his father expressed a wish that he should hold it, and make himself a home, and at that time refused to pay back 'the $100, and receive back the contract. The fact that the father afterwards made a deed to Horace could not affect the rights of complainant, and did not work a forfeiture of his contract.

The contract was made in 1873, and the deed was made in 1883, when the father was 74 years old. The consideration in the deed was $1,800. Defendant says he paid $600, and was to work the farm. He worked there five or six months, and then left. The premises were not in the actual possession of any person, but were worked with the farm of Elihu Hains.

The legal title was in Horace Hains, subject to all the rights of the complainant under his contract, which by its terms entitled him to a conveyance in fee at the time of his father's death. The defendant must be held as holding that part of the premises subject to the rights of complainant under the contract.

The testimony was taken in open court before the learned circuit judge. He had an opportunity to see the witnesses,

and to judge of their fairness in giving testimony. He found that the preponderance of evidence was with complainant on the question of defendant's knowledge of the existence of complainant's contract, and, we think, very properly.

We find no error in the record, and the decree must be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred.