CAROLINE M. ROBERTSON *et al.*

*v.*

JOHN O. WHEELER.

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. CLOUD ON TITLE—*complainant in bill to remove must be in possession.* Complainant in a bill to remove a cloud from title must have actual possession of the land, or show that it is unimproved and unoccupied.

2. COURTS—*jurisdiction of subject matter is not a matter of consent.* Jurisdiction over the subject matter of a suit cannot be conferred on a court by consent of parties.

3. NOTICE—*what is not notice of possession—pasturing cattle on the land.* Pasturing cattle on an inclosed lot by the lessee of a portion thereof which is not divided from the rest by any partition fence, does not make his possession of that portion separate from the possession of the remainder, so as to constitute notice of his lessor's rights in the property under an unrecorded deed.

4. SAME—*possession not notice of adverse title.* Possession of land is not notice of title adverse to that under which possession is held.

5. EVIDENCE—*notice of prior unrecorded deed must be clear and positive.* Proof of notice of a prior unrecorded deed, to defeat the title of a purchaser who relies on the records, must be so clear and positive as to leave no reasonable doubt that the taking of the later conveyance was an act of bad faith toward the first purchaser.

6. MORTGAGES—*assignment of secured debt with reservation of security—extinguishment.* A mortgage on land is kept alive, on assigning a judgment for the debts secured thereby against an administrator, reserving the real estate security with all rights therein, but releasing all claims against the estate for anything due upon the judgment; although the mortgagee, as a part of the same transaction, receives a conveyance of the land from a person claiming title under the heirs.

7. LIMITATIONS—*prior mortgages unaffected by statute.* Prior mortgages are unaffected by the ten years limitation act of 1872.

APPEAL from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

SAWIN & VANDERPLOEG, and F. P. SIMONS, for appellants:

The circuit court erred in taking jurisdiction of this cause to set aside the Carrie Walker deed, because the

defendants are in possession and the remedy at law is complete. *Parker* v. *Shannon*, 114 Ill. 192; *Gage* v. *Mayer*, 117 id. 632; *Lundy* v. *Lundy*, 131 id. 138.

The recitals in the decree do not conclude any of the defendants, as all the evidence is preserved. *Cooley* v. *Scarlett*, 38 Ill. 316; *Hughes* v. *Washington*, 65 id. 245.

The statute directs the proceedings to be personal against those who have a right to oppose it, and that the practice shall be the same as in chancery. Rev. Stat. 1874, chap. 3, secs. 98-111.

Upon the death of an ancestor the real estate he may leave undevised descends at once and vests in the heir, subject to the lien of his ancestor's debts if the personal property is insufficient to pay them. And such a title is worthier in law than a title by devise. *Smith* v. *McConnell*, 17 Ill. 135; *Vansyckle* v. *Richardson*, 13 id. 171; *McCoy* v. *Morrow*, 18 id. 519; *Bishop* v. *O'Conner*, 69 id. 431; *Kennedy* v. *Northup*, 15 id. 148.

An administrator's application to sell is not a proceeding *in rem* but *in personam*, and the doctrine of *caveat emptor* applies strictly and with full force to such sales. *Donlin* v. *Hettinger*, 57 Ill. 348; *Fell* v. *Young*, 63 id. 106; *Waldin* v. *Gridley*, 36 id. 532; *Bishop* v. *O'Conner*, 69 id. 431.

An administrator's proceeding is void as against those who are not parties and over whose person the court has no jurisdiction. *Detrick* v. *Migott*, 19 Ill. 146; *McConnel* v. *Smith*, 23 id. 611, and 39 id. 279; *Morris* v. *Hagle*, 37 id. 150; *Trimble* v. *Gibbs*, 14 Ohio, 323; *Huls* v. *Buntin*, 47 Ill. 396; *Botsford* v. *O'Conner*, 57 id. 72; *Long* v. *Thompson*, 60 id. 27; *Smith* v. *Laatsch*, 114 id. 271; *Michel* v. *Hicks*, 19 Kan. 578.

The statute being silent as to purchasers from heirs being necessary parties, it does not therefore follow that they need not be parties. *Chase* v. *Hathaway*, 14 Mass. 221; Bishop's First Book of the Law, sec. 24.

Notice by possession depends upon whether the inquiry which it is presumed to excite would, in the natural course of events, disclose the title under an unrecorded

deed.  *Chicago* v. *Witt*, 75 Ill. 211; Wade on Notice, secs. 286, 287; *McMechan* v. *Griffing*, 3 Pick. 150; *Fair* v. *Stevenot*, 29 Cal. 486; 3 Washburn on Real Prop. (4th ed.) 317; *Wait* v. *Smith*, 92 Ill. 385; *LaStrade* v. *Barth*, 19 Cal. 678.

Possession is presumed to follow the title, and if consistent with the title of record is not notice of any unrecorded ·deed.  3 Washburn on Real Prop. (4th ed.) 317; Tiedeman on Real Prop. sec. 695.

It is the undoubted right of the holder of an equity or a defective title to buy in an outstanding legal title to protect his interest.  2 Pomeroy's Eq. Jur. sec. 732; Beach on Modern Eq. Jur. sec. 373; *Whalen* v. *Bishop*, 58 Ill. 162; *McNary* v. *Southworth*, id. 473.

WILLIAM M. JOHNSTON, for appellant Patrick W. Snowhook.

U. P. SMITH, for appellee:

A petition by an administrator to sell land to pay debts is not a chancery, but a statutory, proceeding. *Moline Water Power* v. *Webster*, 26 Ill. 289; *Shoemate* v. *Lockridge*, 53 id. 803.

It has been repeatedly held in this State that it was not necessary to make a purchaser from the heirs a party to such a proceeding.  *Vansyckle* v. *Richardson*, 13 Ill. 173; *Harding* v. *LeMoyne*, 114 id. 65.

The creditors have a lien upon the property for the payment of their debts, and the proceeding to sell land to pay debts is in the nature of a proceeding *in rem*, and this lien may be enforced against the purchasers from the heirs.  *McCoy* v. *Morrow*, 18 Ill. 519; *Myer* v. *McDougal*, 47 id. 278; *Vansyckle* v. *Richardson*, 13 id. 171.

Actual notice is not essential to give effect to a prior unrecorded conveyance, but constructive notice of such conveyance is all that is required; and any fact or circumstance coming to the knowledge of the subsequent purchaser which would put a prudent man on inquiry, and which, if pursued, would lead to actual notice of an

unrecorded deed, is sufficient to invalidate the subsequent purchase. *Anthony* v. *Wheeler*, 130 Ill. 128; *Chicago* v. *Witt*, 75 id. 211; *Stokes* v. *Riley*, 121 id. 166; *Dugan* v. *Follett*, 100 id. 581.

The land was enclosed by a high board fence, and was used as a pasture for cattle. This was a sufficient occupancy and possession under the law of this State. *Doty* v. *Broderick*, 83 Ill. 475; *Williams* v. *Brown*, 14 id. 200; *Brown* v. *Keller*, 32 id. 151; *Tillotson* v. *Mitchell*, 111 id. 518; *Bank* v. *Godfrey*, 23 id. 557; *Ballance* v. *Fortier*, 3 Gilm. 291; *Coari* v. *Olsen*, 91 Ill. 279.

Harding having been in possession of said premises, this possession is presumed to continue, of which all parties were bound to take notice. 2 Pomeroy's Eq. Jur. 621; *Hatch* v. *Bigelow*, 39 Ill. 547; *Benjamin* v. *Carter*, 4 Ired. 310.

The defendants have not bettered their position by putting improvements upon the property. *Smith* v. *Jackson*, 76 Ill. 254.

Mr. Justice Magruder delivered the opinion of the court:

The original bill in this case was a bill to foreclose a mortgage, executed by M. O. Walker on May 24, 1871, to the Globe Insurance Company, upon the south half of lot 7, being a lot between Forest and Prairie avenues and Thirty-third and Thirty-fifth streets in Chicago, for the purpose of securing a note of that date for $10,000.00, signed by said Walker, payable to the order of said insurance company five years after date, with six per cent interest payable annually, which note is alleged to have been assigned in 1875 to George F. Harding, and afterwards, on May 7, 1883, to have been assigned to the appellee, John O. Wheeler, a citizen of New York. We are satisfied that, though the appellee is the nominal complainant, the real complainant is George F. Harding. M. O. Walker died on May 28, 1874, leaving a widow, Martha A. Walker, and two sons, Samuel O. Walker and

Edward S. Walker, as his only heirs-at-law. On January 14, 1875, Augustus L. Chetlain was appointed administrator of the estate of M. O. Walker. The original bill makes parties defendant thereto the sons, widow and administrator aforesaid, and also the appellants, Caroline M. Robertson, James D. Robertson, her husband, James Stroud, P. W. Snowhook, S. D. Ward, Thomas B. Bryan, Jennie B. Bryan, Joseph T. Anthony, and others.

On February 8, 1890, an amended bill was filed in the name of appellee, which seems to be a bill with a double aspect, so framed as to be considered a bill by a mortgagee to foreclose the mortgage above described, when looked at from one point of view; and also so framed as to be considered a bill by the holder of the legal title to remove a cloud from such title, when looked at from another point of view. Its prayer is in the alternative, either that an account may be taken of what is due the complainant in principal and interest upon said mortgage, and that a sale may be made of said premises, and that, out of its proceeds, payment may be made to complainant of what is found to be due on said mortgage; or that, if the court see fit, a decree may be entered setting aside the deed hereinafter mentioned from Carrie Walker, wife of said Samuel O. Walker, to the appellant, Caroline M. Robertson, and declaring the same fraudulent and void as against complainant.

The bill sets out certain conveyances from the owners of the equity of redemption of said mortgaged premises, executed to George F. Harding, while owning said note and mortgage. Ordinarily, where the owner of a mortgage becomes also the owner of the equity of redemption, a merger takes place, and the mortgagee is the owner in fee of the whole title. If the complainant here is to be regarded, not as a mortgagee, but as the owner of the full title, and, if the bill is to be treated as a bill by such owner to remove a cloud from his title, then the court below erred in taking jurisdiction of the cause, be-

cause it is conclusively shown, that the defendants, Robertson and Stroud, and those holding under them, were in possession of the premises when the original bill was filed, and also when the amended bill was filed. To maintain a bill to remove a cloud from title it must be alleged and proved, either that the complainant is in the actual possession of the lands, or that they are unimproved and unoccupied. (*Lundy* v. *Lundy*, 131 Ill. 138.) In the case at bar, the complainant was not in the actual possession of the premises, nor were they unimproved and unoccupied, at the time of filing either the original or amended bill. We do not regard the stipulation between the parties found in the record as being broad enough to amount to an agreement, that the jurisdiction of the court should not be objected to. But whether the stipulation is capable of the construction claimed for it, or not, can make no difference; for it is well settled, that jurisdiction over the subject matter cannot be conferred upon a court by consent of parties. (*Leigh* v. *Mason*, 1 Scam. 249; *Beesman* v. *City of Peoria*, 16 Ill. 484; *Peak* v. *People*, 71 id. 278.)

The defendants below, appellants here, seek to defend against the bill, not only as being a bill to remove a cloud, but also as a bill to foreclose the mortgage in question, upon the alleged ground, that said mortgage has been discharged, and is no longer a subsisting incumbrance, and that the defendants, Caroline M. Robertson and James Stroud, are the owners of the title freed from the lien of the mortgage. In order to understand this contention, it will be necessary to state the history of the conveyances already referred to and the facts in regard to the same.

By deed dated September 20, 1875, and recorded September 22, 1875, Samuel O. Walker and his wife, Carrie Walker, conveyed said lot 7 and other property to Charles Fargo. By another deed also dated September 20, 1875, and recorded September 22, 1875, Edward S. Walker conveyed said lot 7 and other property to Charles Fargo.

While Charles Fargo was thus the holder of the title to the south half of lot 7 subject to the widow's dower, the administrator, Chetlain, filed a petition on April 4, 1876, in the county court of Cook county for leave to sell real estate to pay debts owing by the estate of M. O. Walker, making Samuel O. Walker, Edward S. Walker, Martha A. Walker, Charles Fargo and others parties defendants thereto ; and thereafter, on February 8, 1877, filed an amended petition therein for the same purpose, which described said lot 7, stated that the south half thereof was subject to said mortgage for $10,000.00, that said Walker died leaving said widow and ·two sons, his sole surviving heirs; "and that said heirs have conveyed their interest to one Charles Fargo." This petition was answered by the two sons, admitting the facts and consenting to a decree for the sale of the real estate. By deed dated March 23, 1877, and recorded on November 2, 1878, Charles Fargo and his wife conveyed said lot 7 and other property to Carrie Walker, the wife of Samuel O. Walker. Thereupon, on August 13, 1878, upon motion of the administrator, the petition was dismissed as to Charles Fargo. Afterwards, on August 30, 1878, a decree of sale was entered therein, ordering that said south half of lot 7 be sold for cash, subject to the widow's dower. Subsequently, the administrator made his report to the county court, stating that, on October 15, 1878, he struck off and sold the south half of said lot for $100.00 to George R. Grant, and prayed that he might be allowed to make a deed to the purchaser, and that his report might be approved; said report was approved and the sale confirmed on October 22, 1878.

By deed dated July 20, 1878, and recorded July 1, 1885, Carrie Walker and her husband conveyed the south half of said lot 7 to George F. Harding. By deed dated May 7, 1883, recorded July 1, 1885, George F. Harding and wife conveyed said south half of lot 7 to the appellee, John O. Wheeler.

By deed dated October 15, 1878, and recorded July 1, 1885, Augustus L. Chetlain, administrator, etc., conveyed the said south half of lot 7 to George R. Grant. By quit-claim deed, dated February 25, 1883, and recorded July 1, 1885, George R. Grant and wife conveyed said south half of lot 7 to George F. Harding. By deed dated May 7, 1883, and recorded July 1, 1885, George F. Harding conveyed said south half of lot 7 to appellee, John O. Wheeler.

It will be observed, that none of these deeds—neither the deed from Carrie Walker to Harding, nor the deed from the administrator to Grant, nor the deed from Grant to Harding, nor the deeds from Harding to appellee—were recorded until July 1, 1885. The deed from Carrie Walker to Harding and the administrator's deed were withheld from record for nearly seven years.

Before the recording of any of the foregoing deeds, the appellant, Caroline M. Robertson, who had obtained deeds from Thomas B. Bryan and his wife to the said south half of lot 7 in December, 1884, and had gone into possession of the same and built a house thereon, obtained a deed, dated June 9, 1885, executed to her by Carrie Walker and her husband, conveying said south half of lot 7, which deed was recorded June 15, 1885.

The deeds here mentioned are also described in *Anthony* v. *Wheeler*, 130 Ill. 128. In addition to said deed dated June 9, 1885, recorded June 15, 1885, executed by Carrie Walker and her husband to Caroline M. Robertson, and conveying the south half of lot 7, etc., defendants also introduced here, as they did in *Anthony* v. *Wheeler*, *supra*, "two tax deeds, one dated March 23, 1877, recorded the 26th of that month, and another dated March 31, 1881, recorded April 5, 1881,—and from these, through *mesne* conveyances, the said Caroline M. Robertson, on December 17, 1884, received a deed from appellants, Jennie B. Bryan and husband, which was recorded December 19, 1884."

The question which arises upon the foregoing statement of facts is this: Who owns the equity of redemption in the south half of said lot 7, which M. O. Walker owned when he died, and which descended to his two sons, Samuel O. Walker and Edward S. Walker, subject to the widow's dower? Unquestionably, the title stood in Carrie Walker on June 9, 1885, so far as the records showed. When, on that day, she deeded the property to the appellant, Caroline M. Robertson, the latter obtained a good title, unless she had notice of the previous deed to Harding, or was put upon inquiry in relation thereto in such a way, that she was bound to take notice of that deed. We find no proof in the record to show, that she had any actual notice of the deeds to Harding, either when she bought Bryan's title in December, 1884, or when she obtained the deed from Carrie Walker in June, 1885. But it is said, that she was put upon inquiry by two circumstances. These circumstances are, *first*, the alleged possession of the premises by Harding, *second*, the county court proceedings, showing the petition for sale of land to pay debts, and the sale of the land to Grant in pursuance of such petition.

*First*—As to possession. When M. O. Walker died there was a fence around lot 7. This fence, sometimes out of repair and sometimes in repair, seems to have been kept up wholly or partially until about the spring of 1884. From some time in 1878 to the spring of 1882 one Soltow, a German, who lived in the neighborhood, pastured his cows upon the lot, and took care of the fences and sidewalk. A lease was executed by Harding to Soltow dated in July, 1878, leasing the south half of the lot to the latter from July 20, 1878, to July 20, 1879. No other lease seems to have been executed to him. He ceased to pasture his cows there, and left the premises, in the spring of 1882. It will be noticed, that there was no partition fence between the north half and the south half of the lot, but the fence enclosed the whole lot.

By foreclosure of a trust deed executed by M. O. Walker in his lifetime to the Republic Life Insurance Company upon the north half of said lot 7, a master's deed was executed in 1879 to Samuel D. Ward, who had been appointed receiver of that company.  In addition to the title to the north half of the lot thus owned by Ward, he became the owner of the tax title to the whole of lot 7 under said tax deed of 1877, and also the owner of the tax title to the whole of the lot under said tax deed of 1881.  Soon after recording the first tax deed in 1879 Ward went upon the property, found it enclosed by a fence, found some cows there, and, being informed that they belonged to "a man opposite," told the latter that he owned the property, and placed a sale-board on the property, saying:  "For sale by Samuel D. Ward, receiver," etc.

So far as the north half of the lot was concerned, it cannot be said that Soltow had any possession by virtue of his lease of the south half from Harding.  The fence itself, having been there before M. O. Walker's death, was consistent with the record title which was in Carrie Walker.  "No inference is to be deduced from possession when it is consistent with the possessory title on record." (3 Washburn on Real Prop. marg. p. 591).  There being no partition fence between the north half and the south half of the lot, there was no distinct use or appropriation of the south half by Soltow, so as to make the possession thereof separate from the possession of the balance of the lot.  Possession, before it can be held to operate as notice of an unrecorded deed, must be "open, visible, exclusive and unambiguous, such as is not liable to be misunderstood or misconstrued." (Ibid). "Where a vendor sold a part of his estate, and retained a part, and both he and his vendee occupied the premises, it was held not to be a notice of the purchase." (Ibid).  Such a possession must be of an open and visible character, which will be calculated to apprise the world that the property has

been appropriated and is occupied; and the occupancy must be exclusive. "If only used and enjoyed in common with others, or with the public in general, it could not be regarded as hostile to others claiming title." (*Truesdale* v. *Ford*, 37 Ill. 210; *Wait* v. *Smith*, 92 id. 385.)

But in the spring of 1882 Soltow quit the premises, and thereafter had nothing more to do with them. At that time Ward took possession of the premises and leased them to one Breser, a German, who lived upon a lot adjoining the lot in question. The fence was in a dilapidated condition, and persons were in the habit of passing diagonally across the lot. Two leases are in evidence, executed by Ward to Breser, one, dated May 1, 1882, leasing the whole of lot 7 to Breser for one year from May 1, 1882, for $25.00, the tenant to keep the premises in repair, and allow no one to trespass or place sign boards on the property; the other, dated April 25, 1883, leasing the whole of lot 7 to Breser for one year from May 1, 1883. Ward swears, that the property was not improved; that he had no notice of any one being in possession, was told that the fence had been placed there by Walker, and found no one claiming the property as tenant or owner.

The evidence is, we think, conclusive, that the possession of Breser under the leases above mentioned was that of Ward, and those holding under him. It is sought to connect Breser with Soltow by claiming, that Breser was the successor of Soltow, and therefore the tenant of Harding. The only evidence of this is the testimony of Soltow, a feeble and palsied old man, who says: "I left Breser to take care of it; he lived near the lot." But Breser denies, that he had any arrangement with Soltow to go in there, or that Soltow gave him permission to take possession. He says that Ward gave him permission to go in, and, so, he took a lease from Ward, and afterwards another lease, and fixed up the fence, and put his cows in the enclosure, and kept them there; and that Soltow

never told him who his landlord was, and that he never knew who his landlord was. In May, 1883, Ward sold the premises to one Charles L. Boyd; and the record shows a deed, dated and recorded May 14, 1883, from Ward (under decree of circuit court) to William S. Gee, conveying the south half of lot 7 for $4323.17; and a deed dated and recorded May 15, 1883, from Gee to Melvina Boyd, wife of said Charles L., conveying said south half of lot 7 for $5000.00. At the time of these conveyances, to-wit: on May 15, 1883, Ward assigned the lease with Breser to Gee, who held the title for Mrs. Boyd. Afterwards, by deed dated October 27, 1883, and recorded December 3, 1883, Mrs. Boyd and her husband conveyed the south half of lot 7 for $15,000.00 to Jennie B. Bryan, the wife of Thomas B. Bryan. Subsequently, by three deeds dated and recorded in December, 1884, Mrs. Bryan and her husband conveyed said south half of lot 7 to the appellant, Caroline M. Robertson.

If there was any arrangement for the transfer of possession from Soltow to Breser, it was unknown to Ward or Boyd or Bryan. Thomas B. Bryan swears that, when his wife bought the property of Boyd, the lease with Breser was turned over to him by assignment from Boyd; that Breser was Boyd's tenant; that Breser was in possession; and that he (Bryan) "was not aware * * * that any one else was in possession or claimed possession; quite the reverse." Now what were the circumstances of the purchase by Caroline M. Robertson, appellant, from the Bryans? Her husband, James D. Robertson, saw a sign-board on the property: "For sale by Ulrich." Going to Ulrich he learned that Bryan was the owner, and at once opened negotiations with Bryan, and purchased first a part, and afterwards other portions, of the south half of the lot. Breser's lease had expired in the spring of 1884, and no attention was paid to keeping up the fence, so that, in December, 1884, when Mrs. Robertson purchased, the property was almost an open common,

162—37

people passing over it at their pleasure. There were no improvements upon the property. Robertson took possession in December, 1884, and commenced building a house, which was completed on April 28, 1885. He leased a portion of the property to one J. T. Anthony, and sold a part to one James Stroud in June, 1885, the deed to Stroud bearing date June 15, 1885, and recorded June 17, 1885. Robertson swears, that he had no notice or knowledge of any claim by Harding when he bought the property, and never heard of any claim by Harding until after the sale to Stroud; and that, when he took possession in December, 1884, no one was in possession at all.

If there was any possession, which operated in any way as notice to Robertson, it must have been the possession of Breser. The evidence clearly shows, that Breser's possession ended in the spring of 1884; but, if it be conceded that it continued until December, 1884, how could it affect Robertson with notice of Harding's rights? Breser was then the tenant of Bryan, and his possession was consistent with the title which Robertson was buying for his wife, and not adverse to that title. Inquiry based upon the possession of Breser could have disclosed no other title than that of Ward under whom Bryan held. Breser was then in possession of the property under a claim adverse to Harding's claim. Possession is only notice of the title under which it is held. "Where, * * * at the time of the purchase there is one in possession who * * * holds adversely to the * * * grantee under an unrecorded instrument, in a subsequent contest concerning the title, this possession can only be availed of as notice by such possessor and those in whose right he pretends to hold. It could not be used either as notice or as evidence of notice of any title or interest claimed by a stranger; for the inquiry which it might be presumed to excite would not in the natural course of events develop such stranger's title." (Wade on Notice, sec. 287; *City of Chicago* v. *Witt*, 75 Ill. 211). Where a purchaser

finds his vendor in possession either in person or by a tenant, he has a right to assume that such possession was rightfully obtained, unless he has knowledge or information to the contrary. (*Wait* v. *Smith*, 92 Ill. 385).

After a careful examination of the evidence, we are of the opinion that appellants were not affected with notice of the unrecorded deeds, under which appellee holds, by reason of any possession which was sufficient to put them upon inquiry.

*Second*—The county court proceedings. These proceedings, as they appeared upon the abstract hereinafter referred to, did not show that any deed had been made to Grant by the administrator, but merely that the premises had been sold to Grant. It must be taken to be the law of this case, that those proceedings cannot be regarded as such *constructive* notice as will invalidate the title of the appellants; because it has been so held in reference to the title now under consideration in *Anthony* v. *Wheeler*, 130 Ill. 128. Upon the question of *actual* notice the same testimony is before us here, which was before us in the *Anthony case*, and such additions as have been made to that testimony are not sufficient to change the view then expressed, which we still entertain. That view was stated in the following terms (p. 135): "The position sought to be maintained is, that the proceedings in the county court were sufficient to put her (Caroline M. Robertson) on inquiry, which, properly pursued, would have led to knowledge of the administrator's deed. There is no proof whatever that she had actual knowledge of that proceeding. An attempt was made to show that such knowledge was brought home to her husband, who seems to be the real party in interest, through an abstract of the title; but this he denies, and we think the weight of the evidence is, that he had no such actual notice."

When Robertson bought the property, he had no abstract. He was willing to rely, and did rely, upon the

warranty deed of Thomas B. Bryan. When he proposed to sell a part of the property to Stroud, Stroud obtained an abstract, or a certified copy of one, from Bryan, and submitted it for examination to his attorney, Judge Kohlsaat. Kohlsaat went to see one of the attorneys, whose names appeared upon the record as the attorneys who conducted the proceedings on behalf of the administrator for a sale of the land to pay debts, and not only could not learn from such attorney that any deed had been made to. Grant by the administrator, but was induced to believe that the proceeding by the administrator, as a mode of obtaining title, had been abandoned. Stroud ascertained upon inquiry, that Grant had gone to Europe and could not be seen. Finally, Kohlsaat advised his client, Stroud, that it would be safe for him to make the purchase of Mrs. Robertson, if the latter would obtain a deed from Mrs. Carrie Walker, in whom the title stood upon the record. Accordingly, Robertson, through his agent, one DeYoung, obtained the above mentioned deed from Mrs. Walker and her husband to his wife. We are satisfied from the evidence of both Bryan and Robertson, that the latter did not have the abstract until after the sale to Stroud was concluded, and after the deed from Carrie Walker to his wife was executed and recorded. The contention, therefore, that he had actual notice of the county court proceedings from the statements in regard to those proceedings which appeared upon the abstract, is not supported by the proof.

The title of a subsequent purchaser, who first places his deed on record, will not be defeated upon the ground that he had notice of a prior unrecorded deed of the same premises, unless the proof of such notice is so clear and positive as to leave no reasonable doubt that the taking of the second conveyance was, under the circumstances, an act of bad faith towards the first purchaser. The fact of notice must be proved by direct evidence, or by other facts from which it may be clearly inferred; and

the inference must not be probable, but necessary and unquestionable. "Bare suspicion will not raise an inference of fraudulent intent." (*Rogers* v. *Wiley*, 14 Ill. 65; *Grundies* v. *Reid*, 107 id. 304).

Our conclusion is, that the appellants, Caroline D. Robertson and those holding under her, are the owners of the south half of said lot 7, subject to the mortgage herein sought to be foreclosed, if said mortgage is still a charge upon the property as against them; or if said mortgage cannot be foreclosed against them, that they are the absolute owners of the title as against any title held by appellee.

If appellee has any standing in court, it must be as mortgagee. Is he then entitled to foreclose the mortgage?

On June 9, 1876, Harding, being then the holder of said note for $10,000.00 against the estate of M. O. Walker, and also being the holder of a note for $2500.00 made by M. O. Walker in his lifetime to the Globe Insurance Company, filed these two notes in the probate court against the estate of M. O. Walker, and obtained a judgment thereon for $15,956.50 against the administrator of the estate. On July 20, 1878, Harding entered into a written contract with Samuel O. Walker, acting as trustee, by the terms of which he assigned the judgment so rendered upon the note secured by said mortgage to Samuel O. Walker, trustee, but reserved to himself the real estate security, which he held for said debt, the same as if the assignment had not been made, and provided, that he, Harding, should lose no rights, and should be allowed to protect himself to the full extent of said real estate by said mortgage, agreeing, however, to make no further claims upon M. O. Walker's estate for anything due upon the judgment. We think this agreement shows an intention upon the part of Harding and S. O. Walker to keep the mortgage alive. The deed from Carrie Walker to Harding, for an expressed consideration of one dollar, which was made on July 20, 1878, the

same day on which the contract with M. O. Walker, trustee, was made, appears to have been a part of the same transaction, and not to have been intended as a release of the mortgage, as it was not recorded until July 1, 1885. A conveyance by the mortgagor to the mortgagee will not operate as an extinguishment of the right of redemption, unless it is made to appear that the parties intended such conveyance to be a payment of the debt. (*Burton* v. *Perry,* 146 Ill. 71.)

So far as these appellants are concerned, their purchases were made subject to the mortgage and with full knowledge of it. The mortgage was placed on record as early as January, 1872. It was not due until May 24, 1876, and, when the original bill was filed in this cause in February, 1886, the mortgage was not barred by the Statute of Limitations, but was then a subsisting obligation. Section 11 of the Limitation act of April 4, 1872, which provides, that "no person shall commence an action or make a sale to foreclose any mortgage or deed of trust in the nature of a mortgage unless within ten years after the right of action or right to make such sale accrues," (2 Starr & Cur. Stat. 1550), is prospective only, and does not apply to mortgages executed and delivered previous to that date. (*McMillan* v. *McCormick,* 117 Ill. 79). This mortgage was executed on May 24, 1871, and is governed by the old Limitation law in force prior to 1872.

It cannot be claimed by the appellants, that they were misled into the belief, that the mortgage had been discharged or abrogated through merger, by anything which appeared of record. When Mrs. Robertson purchased the property from Bryan in December, 1884, and again when she obtained the deed from Carrie Walker on June 9, 1885, the deed of the latter to Harding was not on record, but, on the contrary, the records disclosed the mortgage here sought to be foreclosed as a subsisting encumbrance upon the property.

Our conclusion is, that the appellee is a mortgagee and has no other rights than those of a mortgagee, and that Caroline M. Robertson and those holding under her are the rightful owners of the equity of redemption.

The decree of the circuit court, which found appellee to be the owner of the property, is therefore reversed, and the cause is remanded to that court with directions to ascertain the amount due upon the said mortgage of May 24, 1871, and direct a sale of the premises for the payment of the same with full right of redemption in appellants, and with further directions to proceed in accordance with the views herein expressed.

*Reversed and remanded.*