## CHERRY RIVER NATIONAL BANK OF RICHWOOD, WEST VIRGINIA *v.* WALLACE.

1. VENDOR AND PURCHASER—CONSTRUCTIVE NOTICE.

> A purchaser of the vendor's interest in a land contract is chargeable with constructive notice where, having the means of knowledge, he does not use them.

2. SAME—DUTY TO DISCOVER FACTS—CONSTRUCTIVE NOTICE.

> A purchaser of the vendor's interest in a land contract who has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making, such obvious inquiries, must be taken to have notice of those facts which he would have readily ascertained had he used such ordinary diligence.

3. SAME—DISCOVERY OF FACTS BEFORE PURCHASE OF INTEREST.

> An intending purchaser of the vendor's interest in a land contract cannot be bound to do more than apply to the party in interest for information, and will not be responsible for not pushing his inquiries further, unless the answer which he receives corroborates the prior statements, or reveals the existence of other sources of information.

4. SAME—ALTERATION OF ASSIGNMENTS—NOTICE.

> Defendant holder of land contract vendor's mortgaged interest as security for balance due on a loan was not required to assume that assignment of such interest, drafted by plaintiff, but altered by defendant, would be acceptable to plaintiff, hence, under the circumstances, was not bound to inquire of plaintiff as to whether or not it had acquired any interest before making an outright purchase of the vendor's interest from the vendor.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am Jur, Vendor and Purchaser, § 696.
[2] 55 Am Jur, Vendor and Purchaser, §§ 697, 698.
[3, 4, 6] 55 Am Jur, Vendor and Purchaser, § 703.
[5] 58 Am Jur, Witnesses, §§ 560, 615.

5. WITNESSES—CROSS-EXAMINATION UNDER STATUTE.

Testimony given by defendant who was called for cross-examination under the statute, was binding on plaintiff, where not contradicted by the other proofs in the case (CL 1948, § 677.-66).

6. VENDOR AND PURCHASER—SUBSEQUENT PURCHASERS OF VENDOR'S INTEREST.

Plaintiff, seeking to establish its right to certain security for repayment of loan made to vendor under a land contract, from defendant who had received an assignment drafted by plaintiff, forwarded by the vendee to defendant who altered it and returned it to the vendor, was not entitled to impress trust upon defendant's interest where subsequent to redelivery to the vendor defendant was not advised that plaintiff had accepted the altered assignment, before purchasing from the vendor his entire interest subject to previously-existing mortgage and no showing is made of inability or attempts to make collection from the vendor, since, under the circumstances, it was incumbent upon plaintiff to advise defendant of its interest in the vendor's interest in order to prevent defendants from becoming a bona fide purchaser.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted October 6, 1950. (Docket No. 57, Calendar No. 44,885.) Decided January 8, 1951.

Bill by Cherry River National Bank of Richwood, West Virginia, against Thomas J. Wallace and others to impress a trust upon real estate. Decree for defendants. Plaintiff appeals. Affirmed.

*G. Leslie Field,* for plaintiff.

*E. C. Ide,* for defendants.

CARR, J. Plaintiff brought this suit in equity in the circuit court of Wayne county to establish its right to certain security for the repayment of a loan made by it to William W. Huntington and Bernice B. Huntington, husband and wife. There is no dispute between the parties as to material facts. In

1947, Mr. and Mrs. Huntington were the owners of premises in the city of Detroit, located at 14549 Northlawn avenue. They entered into a land contract with defendant Joseph Moritz for the sale and purchase of this property for the sum of $8,900, with a down payment of $1,500 and the balance payable in monthly instalments of $60 each, including interest. The contract was subject to a mortgage, on which payments were made each month to the Detroit Trust Company, in the sum of approximately $4,000.

In July, 1947, the vendor's copy of the land contract was turned over to defendant Thomas J. Wallace.. The latter at the time held a note executed by Mr. and Mrs. Huntington in the sum of $1,000, on which some payments had been made. Mr. Wallace accepted possession of the contract with the under-standing that he would collect the payments from the vendee, turn over to the Detroit Trust Company each month the sum of $47 payable on the mortgage, and retain the balance to apply on the indebtedness to him. This arrangement continued for several months.

In February, 1948, Mr. and Mrs. Huntington sought to obtain from plaintiff bank a loan in the sum of $3,000. By way of security it was agreed that they would assign to plaintiff their right and title to all moneys payable to them under the land contract. In accordance with the agreement a so-called assignment was prepared by plaintiff's attorneys and executed by the Huntingtons. It recited that the vendor's copy of the contract was in the possession of Thomas J. Wallace "for the purpose of his making collections of said purchase money as it becomes due at the rate of $60 per month and paying unto the Detroit Trust a sufficient amount therefrom to pay taxes upon said real estate and with directions to send the balance to us every 6 months."

The instrument stated the total selling price of the property under the contract, and contained a warranty that there was a balance of $7,222.19 still payable under its terms. Mr. and Mrs. Huntington expressly agreed not to assign, release or surrender the contract, or any rights thereunder, so long as their obligation to plaintiff remained unpaid. They also granted the right to defendant Thomas J. Wallace as their agent to forward to the plaintiff the balance of the payments received by him "after making deposit to cover taxes," and he was expressly authorized to accept the assignment for that purpose. In its amended bill of complaint plaintiff alleged that it agreed to make the loan provided the instrument evidencing its interest in said land contract was accepted in writing by Mr. Wallace. It is not disputed that the consummation of the loan sought by the Huntingtons was conditioned on Mr. Wallace accepting the assignment and thereby agreeing to act in plaintiff's behalf.

Following its execution by the Huntingtons, the assignment was forwarded to Mr. Wallace for acceptance or rejection by him. Presumably for the purpose of indicating the situation as it actually existed with reference to the disposition of the payments made by the vendee under the land contract, he made certain changes and additions. By insertion of the words "all payments and," he altered the writing to indicate that the monthly payment to the Detroit Trust Company included not only taxes on the real estate but also payments that were required to be made in addition to taxes, the reference being intended to refer to the monthly payment of $47 on the mortgage. He also added to the writing the following statement:

"The signing of this document is subject to a note signed by Mr. and Mrs. Huntington, dated July 25, 1947, of which this land contract mentioned above is

to be held as security until said note is paid. Amount of note ($1,000.00) Less approx. ($300.00) of Mr. Huntington's money I have in my poss. at present."

He also inserted a statement of acceptance as of February 11, 1948, together with his address and telephone number.

The writing, as altered, was returned to plaintiff February 19, 1948, apparently by Mr. Huntington, and the loan was consummated on that day. Mr. and Mrs. Huntington signed a promissory note for $3,000, payable to plaintiff and bearing date February 5, 1948. The note was payable in 90 days after date, and after deducting interest at the rate of 6 per cent. per annum for such period the balance was placed by plaintiff to the credit of the Richwood Supply Company, under which name Mr. Huntington was carrying on business at the time. Plaintiff did not notify Mr. Wallace that the assignment as altered by him was satisfactory, or that it intended to make the loan. Neither did it advise him that the loan was made.

It appears from the testimony of Mrs. Huntington that her husband telephoned Mr. Wallace shortly after February 19th. It is the claim of the latter· that Mr. Huntington advised him, in substance, that the loan had not been obtained from the plaintiff, and that the Huntingtons wished to dispose of their interest in the Detroit property immediately in order to raise money. Mr. Wallace claims that he undertook to find a purchaser on satisfactory terms, but was unable to do so. The result was that the property was deeded to Mr. and Mrs. Wallace, and the vendor's interest under the land contract was assigned to them, the instruments of conveyance being dated February 26, 1948. The proofs indicate that the papers were prepared in Detroit and were forwarded to Mr. and Mrs. Huntington for execution by them in West Virginia. The contract

was discounted in the sum of approximately $1,200. A check in the amount of $1,400 was sent to Mr. Huntington by Mr. Wallace on March 5, 1948. It is the claim of the defendants that they acted in good faith in the transaction, believing that the altered assignment had not been accepted by plaintiff and that the proposed loan, as they were advised by Mr. Huntington, had not been made.

Plaintiff alleged in its bill of complaint that Mr. and Mrs. Wallace took the deed and assignment to them charged with notice of plaintiff's rights, and that they held title to the premises and to the vendor's interest in the land contract as "trustees *ex malificio*." They asked that the premises and the vendor's interest be impressed with a lien to secure the balance owing to them by the Huntingtons, that the contract vendee, defendant Moritz, be required to make his payments into court, pending determination of the case, and that the making of payments on the mortgage should also be required. The trial court came to the conclusion that plaintiff had not established its right to the relief sought, and entered a decree dismissing the bill of complaint. From such decree the plaintiff has appealed.

It is the claim of the plaintiff that Mr. and Mrs. Wallace were not bona fide purchasers of the property, that before taking the assignment of the land contract and the deed they should have inquired from plaintiff whether it claimed any interest in and to the contract, or the moneys payable thereunder, and that failure to do so evidenced a lack of good faith. Reliance is placed on the rule laid down in *Converse* v. *Blumrich,* 14 Mich 109, 120 (90 Am Dec 230), where it was said:

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them: *Mayor & City Council of Baltimore* v. *Williams,* 6 Md 235. If he has knowledge of such

facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained: *Whitbread* v. *Jordan & Boulnois*, 1 Y&C 303 (160 Eng Rep 123). But he can not be bound to do more than apply to the party in interest for information, and will not be responsible for not pushing his inquiries further, unless the answer which he receives corroborates the prior statements, or reveals the existence of other sources of information."

See, also, *Smelsey* v. *Guarantee Finance Corp.*, 310 Mich 674.

The duty resting on Mr. Wallace was to use ordinary caution in the transaction. Did he exercise the measure of care that the ordinary prudent businessman would have exercised under the circumstances? The fact that he did not use the utmost caution does not necessarily lead to the conclusion that he and Mrs. Wallace were not good-faith purchasers of the property. *Holly Lumber & Supply Co.* v. *Friedel*, 271 Mich 425. Undoubtedly he might have contacted plaintiff before making the purchase. Whether he should have done so depends on the inferences to be drawn from the facts in the case.

It is obvious that the assignment forwarded to Mr. Wallace by plaintiff was materially altered by him before he returned it. The changes made were well calculated to direct plaintiff's attention to material facts not disclosed to it by the Huntingtons. It is apparent from the assignment as originally prepared that plaintiff had not been informed with reference to the payments on the mortgage or the obligation owing by the Huntingtons to Mr. Wallace. The cashier of the bank, testifying as a witness in its behalf, stated that when the instrument

was returned to him he noted that Mr. Wallace claimed an interest to the extent of about $700. He further said that up to that time, that is, February 19, 1948, he had not known about the mortgage. It must have been obvious to him that the true situation had not previously been disclosed. Notwithstanding such situation, the transaction was consummated and the money turned over to Mr. Huntington.

The cashier, who apparently acted for the bank in the matter, testified that he was satisfied with the assignment as it was returned to him by Mr. Wallace. It is conceded that plaintiff might have rejected the altered instrument and have refused to make the loan. It is conceivable, also, that it might have completed the transaction without requiring any security. Electing to proceed on the basis of the assignment as altered, it should have notified Mr. Wallace to that effect. The latter was not required to assume that the altered draft of the assignment would be acceptable.

Mr. Wallace was called by plaintiff for cross-examination under the statute.* Testimony given by him and not contradicted by other proofs in the case was binding on the plaintiff. *Fleegar* v. *Consumers Power Co.,* 262 Mich 537; *Dahlerup* v. *Grand Trunk Western Railroad Company,* 319 Mich 96. He claimed that the property was purchased by himself and Mrs. Wallace in order to protect the obligation owing by the Huntingtons to him, and that he undertook, in good faith, to dispose of the property to third parties before agreeing to purchase it. It was his claim, also, that at the time he sent the altered assignment to the plaintiff, in February, 1948, that he did not expect that it would be accepted, and that

---

* CL 1948, § 617.66 (Stat Ann § 27.915).

in consequence he was not surprised when informed by Mr. Huntington that the loan was not made.

The proofs on the part of the plaintiff disclose that the original note of $3,000 executed by the Huntingtons was paid in part and a new note in the sum of $2,500, dated May 5, 1948, was given. The loan was further reduced to $2,000, and evidenced by a note in that amount, dated August 5, 1948. This note, with the interest thereon, represents the indebtedness for which the plaintiff is now claiming the right to security. It is conceded that Mr. Wallace is entitled to priority with respect to the amount owing to him by the Huntingtons. It may be noted that there is no showing of inability to collect from the Huntingtons or that attempts to do so have been made by plaintiff.

Plaintiff relies on *Hains* v. *Hains,* 69 Mich 581. There the owner of real estate executed a contract for the sale thereof to one of his sons, the plaintiff in the case. Subsequently he conveyed the property to the defendant, another son, and in answer to the latter's questions as to the status of the prior contract said that such contract had been cancelled. Such, however, was not the fact. Defendant did not make further inquiry, and accepted the conveyance for a named consideration of $1,800. After the father's death plaintiff brought an action for the specific performance of his contract. The trial court granted the relief sought, and this Court affirmed the decree, holding that under the facts defendant was not justified in relying solely on the assurance of the grantor, and that he should have ascertained whether plaintiff claimed an interest in the property.

No claim was made in the case cited that plaintiff was under any obligation to advise defendant with reference to the matter. The latter was not in any way a party to the first transaction. In the case at

bar the situation is, for the reasons above indicated, of wholly different character. Here the carrying out of the transaction, tentatively arranged between plaintiff and the Huntingtons, depended on the acceptance by Mr. Wallace of the so-called assignment. It was necessary that he agree to act in plaintiff's behalf as set forth in the instrument. This he did not do, but, rather, altered the instrument in such manner as to indicate to plaintiff what it might expect if it accepted it as security. As before stated, he had the right to assume that plaintiff would advise him accordingly if it decided to proceed in the matter in reliance on the altered assignment. Not having been so advised, Mr. Wallace was not guilty of bad faith in assuming that plaintiff had elected to reject the proposed arrangement and in accepting the assurance of Mr. Huntington that such was the fact. Prior decisions of this Court cited by plaintiff in support of its contentions are clearly distinguishable from the instant case on the basis of the facts involved.

So far as the record discloses, Thomas J. Wallace's knowledge of the negotiations between plaintiff and the Huntingtons came from the latter, and was contained in the assignment executed by them. It does not appear that there was any direct communication from plaintiff to either Mr. or Mrs. Wallace until October of 1948, when a letter was written by plaintiff's cashier to Mr. Wallace for the purpose of reminding him of their claimed interest with reference to moneys collected on the contract. In view of the situation the decision in *Curtis* v. *Blair,* 26 Miss 309 (59 Am Dec 257), is of interest. In that case the plaintiff Blair brought action for the specific performance of a contract that he had made for the purchase of real estate. A conveyance to him was refused on the ground that he had not acted within the time specified by the contract

and the property was sold to other parties. The agent of the owner had previously informed such parties of Blair's negotiations for the purchase, but, before the conveyances to them were executed, assured them that Blair had failed to perform his agreement. They accepted their conveyances in reliance on such assurance. The appellate court came to the conclusion that plaintiff had not actually performed in accordance with his contract, and, in any event, that he was not entitled to the relief sought as against the subsequent purchasers. With reference to this phase of the case, it was said:

"With much greater reason is he not entitled to have the sale to Crawford and Ayres vacated. They purchased the land from Pinson, after the failure of Blair to perfect the sale. They had previously been informed of Blair's negotiation for the land by Pinson, and evinced any thing else but a disposition to interfere with it. They were, however, afterwards informed by Pinson that Blair had failed to complete the purchase, and, acting in faith of that assurance, they became the purchasers. If it be said that they had notice from Pinson of Blair's negotiation or purchase, or sufficient to put them on inquiry, and ought, by reason of that information, to have satisfied themselves that Blair had no right to the land, they also had notice from the same source that Blair's purchase had failed. They were as well justified in acting on the latter information as on the former; and, under the circumstances, they were not required to seek further information than that last derived from Pinson. See 2 Leading Cases in Equity, part 1, p 104. It would not, therefore, be equitable to cancel the purchase which they have *bona fide* made; and a due regard for their equities would incline us to remit Blair to his remedy at law, if he has any, for the alleged breach of contract on the part of Curtis, rather than to compel a specific performance against Curtis, and deprive Crawford and Ayres of the benefits of their purchase."

Of like import is *Rogers* v. *Wiley,* 14 Ill 65 (56 Am Dec 491), cited with approval in *Robertson* v. *Wheeler,* 162 Ill 566 (44 NE 870), and in *Lowden* v. *Wilson,* 233 Ill 340 (84 NE 245).

In the case at bar we think that decision may properly be based primarily on the failure of the plaintiff to give notice to Mr. Wallace of its acceptance of the arrangements submitted by him in the altered assignment. In view of the somewhat unusual facts presented, plaintiff, having neglected to perform the obligation resting on it in this respect, is not entitled to equitable relief on the theory that the altered assignment was binding on Mr. Wallace although he did not know that it had been accepted and believed, in good faith, that it would not be satisfactory. We cannot agree with the contention that the duty rested on him to inquire from the bank as to the decision that it had made in the premises rather than on it to advise him with reference thereto. Under the circumstances he did not act unreasonably in believing that the information given him by Mr. Huntington was correct. As before noted, his knowledge with reference to plaintiff's possible interest in the property came from the Huntingtons. The conclusion follows that plaintiff failed to establish its claim that Mr. and Mrs. Wallace were not bona fide purchasers of the property in question. Such conclusion renders it unnecessary to consider other questions argued by counsel in their briefs.

The trial judge correctly decided that the plaintiff was not entitled to the relief sought, and the decree is affirmed, with costs to defendants.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.