943 P.2d 855

**Carson Craig HALL, Jr., d/b/a Kit Hall Arabians, Plaintiff–Appellee,**

v.

**WORLD SAVINGS AND LOAN ASSOCIATION, a Federal Savings and Loan Association, Defendant–Appellee,**

and

**Michele Anderson, Co–Trustee for the Bochat Revocable Trust, Defendant–Appellant.**

No. 1 CA–CV 96–0351.

Court of Appeals of Arizona, Division 1, Department A.

April 22, 1997.

Reconsideration Denied March 18, 1997.

Review Denied Sept. 16, 1997.

---

Thomas E. Weland, P.C. by Thomas E. Weland, Phoenix, for Appellee Carson Craig Hall.

Lewis and Roca by Cathy M. Holt, Bret Maidman, Phoenix, for Appellee World Savings and Loan.

Jaburg & Wilk, P.C. by Keith M. Knowlton, Phoenix, for Appellant.

## OPINION

TOCI, Judge.

Michele Anderson, Co–Trustee for the Bochat Revocable Trust, appeals from the trial court's grant of motions for summary judgment in favor of World Savings and Loan Association ("World") and Carson Craig Hall, Jr.

To better explain the legal issues, we summarize the more lengthy statement of facts below as follows: By quitclaim deed, Milton W. and Luella Bochat deeded their residence to an inter vivos trust. After Luella's death, Milton, as trustee, conveyed the residence to his second wife, Sharlene, in an attempt to protect it from his creditors. World later loaned money to Sharlene without actual notice that the conveyance to her was fraudulent and took a first deed of trust on the residence to secure the loan's repayment.

Hall, however, had already obtained a judgment in California against Milton but recorded it in Maricopa County after World had recorded its deed of trust. Hall could have foreclosed the lien of his recorded judgment or sought a general execution to enforce the judgment lien. Instead, Hall sued Milton, Sharlene, and World, to declare the conveyance to Sharlene void and to foreclose what he characterized as a judgment lien against Milton in the amount of the California judgment.[1] After the trial court granted

summary judgment in favor of World and Hall, it entered a judgment of foreclosure, issued special execution, and ordered the residence to be sold, subject to World's first lien, to satisfy Hall's judgment.

This appeal presents two main issues. The first is whether World was a good-faith lender for value without constructive notice of a previous fraudulent conveyance. This requires us to determine whether Milton's deed to Sharlene, originally defective for failure to name the trustee as grantor but later superseded by a corrective deed, put World on inquiry notice of a fraudulent conveyance. The second issue is whether the lien of a recorded judgment—as distinguished from the judgment itself—may be renewed by the filing of an action on the judgment pursuant to A.R.S. section 12–1611.

We find that World had no notice of the fraudulent transfers and therefore affirm judgment in its favor. We reverse the judgment in favor of Hall because he failed to renew his judgment lien by affidavit as required by A.R.S. section 12–1612. Pursuant to A.R.S. section 12–1611, Hall's filing of an action on the California judgment renewed the judgment. The filing did not, however, renew the lien previously created by recording the California judgment with the Maricopa County Recorder. *See* A.R.S. § 33–961(A). Consequently, Hall's judgment lien had expired by the time the trial court entered judgment in this lawsuit. Execution of the judgment was therefore barred by A.R.S. section 12–1551(B). Additionally, we deny Hall's motion to dismiss the appeal as moot and briefly address his contention that the Bochat Revocable Trust was invalid.

## I. FACTUAL AND PROCEDURAL HISTORY

Milton and Luella Bochat, husband and wife, created the Bochat Revocable Trust ("the Trust") dated July 15, 1983.[2] Also on July 15, they executed a "Certificate and Abstract of Trust Existence and Authority"

---

1. Nowhere in the complaint did Hall allege that he had recorded the California judgment and obtained a lien pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 33–961(A) (Supp.1996).

2. Although an unsigned copy of the Trust agreement was found, the signed original has not been produced during these proceedings.

("the Certificate") for the Trust, which identifies Milton and Luella as the settlors; Milton as the trustee; and Milton, Luella, Michele Bochat Anderson, Jeffreys Bochat Barrett, and Robin Stone Barrett as the Trust beneficiaries. The Certificate states that the Trust agreement is irrevocable upon the death of either settlor. It was recorded in the Maricopa County Recorder's Office on August 17, 1983. By a quitclaim deed executed on August 16, 1983, and recorded the next day, Milton and Luella deeded their home at 2308 East Missouri Street in Phoenix, Arizona ("the residence") to the Trust.

After Luella's death in December 1986, Milton remarried, and ownership of the residence was transferred pursuant to a series of recorded transactions. First, by warranty deed executed on April 11 and recorded on April 14, 1989, Milton, as "sole owner," conveyed to his new wife, Sharlene S. Bochat, the residence as her share of community property. Second, in January 1991, Milton executed a warranty deed to correct the April 1989 warranty deed. As trustee and surviving settlor, he conveyed the residence to Sharlene for $10.00 and other valuable considerations. The deed was recorded and then re-recorded to show the names of the Trust beneficiaries, to complete the notary acknowledgment, and to show Sharlene as Milton's wife. Finally, on July 24, 1991, Milton, as husband of Sharlene, executed a quitclaim deed by which he quitclaimed the residence to Sharlene for $10.00 and other valuable considerations. This deed was recorded on August 27, 1991.

Meanwhile, on May 24, 1989, Hall had obtained a judgment in a California federal district court against Milton for the principal amount of $91,844.99 plus costs, attorney's fees, and interest. Hall docketed the judgment in the district court of Arizona on June 7, 1989, and recorded it with the Maricopa County Recorder's Office on February 23, 1993. He then filed a complaint in April 1993 against Milton, Sharlene, and World.

Two months before Hall filed suit, however, World had loaned Sharlene $107,000.00 to refinance an existing loan. To secure the loan, Sharlene executed a deed of trust on the residence to World. Prior to closing on the loan, World had obtained a preliminary title report that showed that title to the residence was vested in "Sharlene S. Bochat, wife of Milton Bochat, as her sole and separate property."

Milton died on March 21, 1994, while Hall's suit and separate bankruptcy proceedings involving Milton's partnership were pending. On February 15, 1995, the bankruptcy court entered an amended judgment finding that the three conveyances of the residence by Milton to Sharlene were null and void. The court declared that title to the residence be "vested in the Bochat Trust ... or such other party in interest as is entitled under applicable non-bankruptcy law."

Michele Bochat Anderson, Co–Trustee of the Trust, filed a counterclaim against Hall and a cross-claim against Sharlene, World, and others not parties to this appeal. She alleged that after the Trust became irrevocable, Milton's attempted transfers of the residence violated the Trust and were without fair consideration. She sought an order quieting title to the residence in the Trust.

World then filed a motion for summary judgment. World's motion argued that under Arizona's Uniform Fraudulent Transfer Act, World was a good-faith lender for value without knowledge that the transfers to Sharlene were fraudulent. According to World, its lien was not voidable but was superior to all other liens on the residence.

Anderson cross-moved for summary judgment against World, arguing that World had a duty to investigate the chain of title to determine the validity of Sharlene's title. Because it had failed to do so, Anderson asserted, World was not entitled to protection as a good-faith lender. She also moved for summary judgment against Hall on the ground that the Trust was valid and had title to the residence. In response, Hall's cross-motion for summary judgment contended that the Trust had no interest in the residence because the recorded memorandum was insufficient to satisfy the statute of frauds and the settlors had not treated the residence as a Trust asset.

The trial court denied Anderson's motions and granted summary judgment in favor of

World and in favor of Hall against all defendants except World. The court found that World was a good-faith lender for value based on the parties' knowledge at the time of the loan transaction, that Milton and Luella failed to satisfy the statute of frauds in creating the Trust, and that Milton's actions concerning the Trust were "inherently inconsistent and insupportable."

Anderson moved for reconsideration, arguing for the first time that because Hall's judgment lien had expired and had not been renewed, Hall had no right to execute upon the residence. The court denied reconsideration and entered a "Judgment and Decree of Foreclosure and Order of Sale" declaring that World had a valid first priority lien on the residence and that Hall had a valid second priority lien; it ordered that the property be sold at public auction, that the lien be paid with the proceeds, and that any surplus be presented to the court for further order.

Anderson timely appealed from the judgment granting World's motion for summary judgment and the denials of her motion for reconsideration and motions for summary judgment.

## II. DISCUSSION

### A. Standard of Review

■■■ In reviewing a grant of summary judgment, we take the facts and evidence in the light most favorable to the nonmoving party. *Anderson v. Country Life Ins. Co.,* 180 Ariz. 625, 628, 886 P.2d 1381, 1384 (App. 1994). We are not bound by the trial court's rulings on issues of law, however, and may vacate a summary judgment awarded erroneously. *Id.*

### B. Judgment for World

Anderson argues that whether World reasonably inquired into the chain of title of the residence and/or had constructive notice of the fraudulent transfers to Sharlene are disputed issues of fact. World responds that

3. A.R.S. § 44–1004(A)(1) (1994) provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the

even if the transfers to Sharlene were fraudulent, World's lien is valid because it was a good-faith lender for reasonably equivalent value without knowledge of any fraud. We agree with World.

The Arizona Uniform Fraudulent Transfer Act, A.R.S. section 44–1001 *et seq.,* provides that a transfer cannot be voided as against a good-faith lender for value. A.R.S. § 44–1008(A) (1994). "A transfer or obligation is not voidable under § 44–1004, subsection A, paragraph 1 [3] against a person who took in good-faith and for a reasonably equivalent value or against any subsequent transferee or obligee." *Id.* The act also protects the lien interests of good-faith lenders as follows:

Notwithstanding voidability of a transfer or an obligation under this article, a good faith transferee or obligee is entitled, to the extent of the value given the debtor for the transfer or obligation, to any of the following:

1. A lien on or a right to retain any interest in the asset transferred.

. . . .

A.R.S. § 44–1008(D)(1).

■■■ But, a lender must take a mortgage without notice, either actual or constructive, of any fraud or outstanding adverse interest. *See Chrysler Credit Corp. v. Burton,* 599 F.Supp. 1313, 1317 (M.D.N.C.1984); *High v. Davis,* 283 Or. 315, 584 P.2d 725, 735 (1978). Direct knowledge of fraud or of an outstanding interest constitutes actual notice. *High,* 584 P.2d at 735. Constructive notice includes both information available through recorded documents and knowledge of facts that impose a duty to inquire. *Id.; see also Chrysler Credit,* 599 F.Supp. at 1317 (actual or constructive notice of grantor's fraud will deny grantee protected status). Further, " 'Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is . . . equivalent to knowledge of all of the facts a reasonably diligent inquiry would disclose.' " *Maricopa Utils. Co. v. Cline,* 60 Ariz. 209, 214, 134 P.2d

debtor made the transfer or incurred the obligation under any of the following:
1. With actual intent to hinder, delay or defraud any creditor of the debtor.

156, 158 (1943) (*quoting Schneider v. Henley,* 61 Cal.App. 758, 215 P. 1036, 1038 (1923)).

In deciding this issue, we are guided by the principles governing bona fide purchasers. "A purchaser is charged with such knowledge as a proper examination of the record would reveal even though he does not in fact examine the record." *Davis v. State,* 1 Ariz.App. 264, 268, 401 P.2d 749, 753 (1965). One is not a bona fide purchaser if he fails to avail himself of information within reach that, if pursued, would have revealed an adverse interest. *Davis v. Kleindienst,* 64 Ariz. 251, 258–59, 169 P.2d 78, 83 (1946); *see Tucson Fed. Sav. & Loan Ass'n v. Sundell,* 106 Ariz. 137, 142, 472 P.2d 6, 11 (1970) (applying *Davis v. Kleindienst* to a mortgagee); *see also Raub v. General Income Sponsors of Iowa, Inc.,* 176 N.W.2d 216, 219 (Iowa 1970) (if reasonably prudent person would investigate possibility of rights hostile to grantor's title, bona fide purchaser is charged with all knowledge that inquiry probably would have disclosed); *Blondell v. Turover,* 195 Md. 251, 72 A.2d 697, 699 (1950) (same); *Cherry River Nat'l Bank v. Wallace,* 329 Mich. 384, 45 N.W.2d 332, 335 (1951) (same). Furthermore, we agree that the title company was World's agent for purposes of the title report, and thus World is bound by whatever notice the title company had while acting within the scope of its authority. *See Chrysler Credit,* 599 F.Supp. at 1318 n. 10; Restatement (Second) of Agency § 272 cmt b (1958) (if agent has reason to know a fact, principal does also).

Anderson contends that World had constructive notice of the fraudulent transfers to Sharlene from the deeds in the chain of title. We disagree. As a matter of law, nothing on the face of the recorded documents alerted either the title company or World to the possibility of fraud or the need for further investigation. The August 16, 1983 quitclaim deed shows that the residence was conveyed to the Trust. The recorded Certificate granted Milton, as trustee, power to sell or convey the trust property even after the Trust became irrevocable. Thus, although the quitclaim deed and warranty deed by which Milton individually purported to convey the property to Sharlene might have raised questions requiring further inquiry, the January 14, 1991 corrective warranty deed from Milton as trustee adequately corrected the defect.

Moreover, the consideration listed in the warranty deed, "good consideration and for the sum of Valuable Considerations $10.00 in hand," did not require further inquiry. Arizona law has long held that lack of consideration by itself is not enough to make a deed inoperative. *In Re McDonnell's Estate,* 65 Ariz. 248, 252, 179 P.2d 238, 240 (1947). "[A] deed which operates without aid from the statute of uses need not be based on any consideration whatsoever in order that it may be effectual to transfer title to the property." *Id.* We take judicial notice of the fact that in Arizona, real property is often transferred by conveyances that recite only nominal consideration. Absent some other indication of fraud in the chain of title, we know of no law or principle that requires lenders to discover the actual consideration paid for previous transfers of property in order to claim the protections of A.R.S. section 44–1008.

None of the recorded documents reasonably disclose a fraudulent intent by Milton. When confronted by similar facts, the court in *Chrysler Credit* maintained, "[t]o hold [the lienholder] to have had notice of their grantor's fraudulent intent would require a title attorney to search well beyond the records and enter the realm of speculation." 599 F.Supp. at 1318–19. Here, the recorded documents did not impose a duty on either World or the title company to search beyond the records or to speculate on Milton's intent in conveying the residence to Sharlene.

The cases cited by Anderson do not compel a different result. In *High,* the preliminary title report contained exceptions for hunting and fishing uses, and the title insurance policies reflected such exceptions; the court held that the lender had a duty to inquire to determine the extent of the interests claimed. 584 P.2d at 736. In *Davis v. State,* the buyers neither conducted a title search nor required title insurance and were properly charged with knowledge of the prior owner's tax lien. 1 Ariz.App. at 268, 401 P.2d at 753.

And in *Davis v. Kleindienst*, the evidence disclosed numerous acts of obvious adverse ownership discoverable by any reasonable inquiry. 64 Ariz. at 259, 169 P.2d at 83.

In summary, the undisputed evidence shows as a matter of law that World had neither actual nor constructive notice that Sharlene's title to the residence had been obtained by fraud. We affirm the trial court's judgment in favor of World.

## C. Judgment for Hall

■ Anderson argues, without response by Hall, that because Hall failed to renew his judgment lien by recording an affidavit of renewal as required by A.R.S. sections 12–1612 and 12–1613(D), the lien expired five years from the date he registered the judgment in Arizona. When an appellant in a civil case raises a debatable issue, and the appellee does not reply, we may treat the lack of a response as a confession of error and reverse on that basis. *Pinal County Juvenile Action No. S–389*, 151 Ariz. 564, 565, 729 P.2d 918, 919 (App.1986); *Burton v. Burton*, 23 Ariz.App. 159, 163, 531 P.2d 204, 208 (1975). Reversal is not mandatory, *Bugh v. Bugh*, 125 Ariz. 190, 191, 608 P.2d 329, 330 (App.1980), however, and because this is purely an issue of law and affects the remanded proceedings, we address it on the merits. *See id.*

We begin with the proposition that A.R.S. section 33–963 (Supp.1996) requires a judgment to "be recorded in the manner provided in § 33–961 ... before the judgment becomes a lien upon ... the real property of the judgment debtor." A.R.S. section 33–961(A) provides, "[a] copy of the judgment ... shall be filed and recorded in the office of the county recorder in each county where the judgment creditor desires the judgment to become a lien upon the real property of the judgment debtor before the judgment shall become a lien...."

Once recorded in the above manner, "a judgment shall become a lien for a period of five years from the date it is given, upon all real property of the judgment debtor" except that property exempt from execution. A.R.S. § 33–964(A) (1990). Here, although the California federal district court entered judgment for Hall against Milton in May 1989, Hall did not record the judgment in the Maricopa County Recorder's Office until February 23, 1993. Thus, Hall's judgment lien was valid only until May 1994, or five years from the date judgment was given.

A.R.S. section 12–1613(C) allows a creditor to renew a lien to extend beyond the five-year period, but "no lien upon or against the real property of the judgment debtor shall be continued by an affidavit of renewal until a copy of the affidavit, certified by the clerk of the court, is recorded in the office of the county recorder." After a creditor records a copy of the affidavit of renewal in the county recorder's office, "the judgment shall be a lien ... against all real property of the judgment debtor, except such as is exempt from execution, ... for a period of five years from the date of docketing the affidavit." A.R.S. § 12–1613(D) (1994). Extending a judgment lien beyond the five-year limitation period, however, also requires a renewal of the underlying judgment. William E. Boyd & Charles M. Smith, *Debtor–Creditor Law in Arizona* 420 (1992).

A judgment may be renewed either by filing a lawsuit thereon or by filing an affidavit of renewal with the clerk of the appropriate court, but not through recordation in the county recorder's office. *See* A.R.S. § 12–1611 (1994) (A creditor may renew a judgment "by action thereon at any time within five years after the date of the judgment."); A.R.S. § 12–1612(A) (1994) (creditor may renew by filing an affidavit of renewal "with the clerk of the proper court"). The filing of the affidavit of renewal with the clerk of the court "shall renew and revive the judgment to the extent of the balance shown due in the affidavit." A.R.S. § 12–1612(D) (1994). To enforce his claim, a party with a judgment "may, at any time within five years after entry of the judgment and within five years after any renewal of the judgment either by affidavit or by an action brought thereon, have a writ of execution or other process issued for its enforcement." A.R.S. § 12–1551(A) (1994).

Thus, Hall properly renewed his judgment by filing this lawsuit before expiration of the

five-year period. *See* A.R.S. § 12–1611. To extend his judgment lien beyond May 1994, however, Hall had to file an affidavit of renewal of the lien with the county recorder's office. *See* A.R.S. § 12–1613(C) (1994). Nothing in A.R.S. section 12–1611, which allows renewal of a judgment by the filing of an action, suggests that one may renew a judgment lien by this method. Additionally, A.R.S. section 33–411(A) provides, "no instrument affecting real property gives notice of its contents to subsequent purchasers ... for valuable consideration without notice, unless recorded." Our recording statutes are for the protection of persons dealing in real property without actual notice. *County of Pinal v. Pomeroy*, 60 Ariz. 448, 455, 139 P.2d 451, 454 (1943).

Furthermore, to hold that a judgment lien is renewed by merely filing an action would require us to overlook the legislative history of the judgment lien statute, A.R.S. section 33–961. Before 1935, a judgment lien was perfected by entry and docketing with the clerk of the court, and therefore a search of court records was necessary to determine if a judgment lien existed. Boyd & Smith, *supra*, at 418. A 1935 amendment eliminated this necessity and created a uniform method of establishing judgment liens through recordation in the county recorder's office. *Id.* Requiring recordation of a renewal affidavit in the county recorder's office to extend a judgment lien is thus consistent with the purpose of our recording statutes.

■ We now turn to the consequences of Hall's failure to record an affidavit of renewal of his judgment lien. Before Milton's death in March 1994, Hall had two options for the enforcement of his judgment. He could have sought a general execution issued on the California judgment, *see* A.R.S. section 12–1553(2) (1994), or filed an action to foreclose the judgment lien on the residence and had it sold pursuant to special execution.

*See* A.R.S. § 33–725(B) (Supp.1996); Boyd & Smith, *supra*, at 422.

Had Hall attempted to enforce the California judgment with a general execution after renewing the judgment by an action on it, his failure to renew the lien of the recorded judgment would not have affected his collection efforts. Because Hall filed a lawsuit purportedly to foreclose the judgment lien, he either had to have renewed the lien or had the residence sold pursuant to lien foreclosure before the lien expired on May 24, 1994. Hall, however, failed to record an affidavit for renewal of the judgment lien, and assuming that his lawsuit was one for foreclosure of a judgment lien on the residence, his judgment came too late because it was entered after expiration of his judgment lien. Thus, the judgment entered in Hall's favor and from which this appeal was taken neither foreclosed a judgment lien nor created one on the residence. *See* A.R.S. § 33–961(A) (judgment must be recorded in recorder's office to become a lien on debtor's real property).

Furthermore, because of Milton's death, no execution could issue except to enforce a lien against his real or personal property. *See* A.R.S. § 12–1551(C) (1994).[4] When the trial court entered judgment for Hall on May 1, 1996, Hall had no lien to enforce against Milton's property.[5] Consequently, the trial court erred in ordering the execution of a non-existent judgment lien. We therefore reverse the judgment in favor of Hall and remand for further proceedings.

### D. Hall's Motion to Dismiss the Appeal

■ Before oral argument, Hall moved to dismiss this appeal as moot because he had executed on the underlying judgment against Milton, even a reversal of Hall's summary judgment would "have no effect on the parties," and the court would have no basis to revoke the sale or to award damages to any

---

4. The statute provides: "No execution shall issue after death of the judgment debtor unless it is for the recovery of real or personal property or enforcement of a lien thereon."

5. If Hall had recorded the May 1, 1996 judgment, he would have a judgment lien which he could enforce pursuant to the general execution

statute, A.R.S. § 12–1553(2), against any real property belonging to Milton on the day the judgment became a lien. Because he would be enforcing a lien on the debtor's real property, the bar imposed by A.R.S. § 12–1551(C) would not apply.

other party. Hall also noted that the Trust had failed to post a supersedeas bond to secure a stay on appeal as provided in Rule 7, Arizona Rules of Civil Appellate Procedure.

As this court held in *Vinson v. Marton & Associates,* 159 Ariz. 1, 4, 764 P.2d 736, 739 (App.1988), a case is moot "where as a result of a change of circumstances before the appellate decision, action by the reviewing court would have no effect on the parties." But "[w]here an appealable issue remains, failure to post a supersedeas bond will not moot an appeal." *Id.* at 10, 764 P.2d at 745 (Kleinschmidt, J., supplemental opinion).

Here, Hall prevailed in the trial court and, by execution, came into possession of what appears to be the Trust's property. "In such cases, restitution is a proper remedy, since such a plaintiff still has the property wrongfully taken, or has sold it and has the proceeds of the sale. In either event, retention would constitute unjust enrichment." *Markel v. Transamerica Title Ins. Co.,* 103 Ariz. 353, 362, 442 P.2d 97, 106, *cert. denied,* 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968), *overruled on other grounds by Burch & Cracchiolo v. Pugliani,* 144 Ariz. 281, 697 P.2d 674 (1985). In *Markel,* the court refused to deny relief on the ground that the appellant had failed to file a supersedeas bond. 103 Ariz. at 363, 442 P.2d at 107. " 'An appellant's election not to take the steps necessary to supersede or stay the judgment or decree pending appeal does not as a matter of law bar his entitlement to restitution upon reversal by the appellate court.' " *Id.* (quoting *Mann v. Thompson,* 118 So.2d 112, 114 (Fla.App.1960)). We therefore reject Hall's contention that the appeal is moot or that not filing a supersedeas bond bars a grant of relief to the Trust.

### E. Validity of the Trust

Finally, Hall contends that an express parol trust in real estate is within the statute of frauds; that the documents purportedly evidencing the Trust are insufficient under the statute of frauds; that some of Milton's actions were inconsistent with the existence of a trust; and that title to the residence remained in Milton and his estate and thus subject to the lien of Hall's judgment against Milton. Because we determined that Hall did not have a judgment lien when the trial court entered judgment, we would ordinarily not consider this assertion. We do so here because the issue may arise on remand.

Anderson argues that the trial court erred in finding that the Trust's interest in the residence was an express parol trust and that the purported interest violates the statute of frauds. She contends that the quitclaim deed from Luella and Milton and the Certificate are sufficient to satisfy the statute of frauds. We agree.

An express parol trust in land is within the statute of frauds. *Rogers v. Greer,* 70 Ariz. 264, 268, 219 P.2d 760, 762 (1950); *Stewart v. Damron,* 63 Ariz. 158, 165, 160 P.2d 321, 324 (1945). A valid trust must have both subject matter that is certain and specifically designated beneficiaries. *Newhall v. McGill,* 69 Ariz. 259, 262, 212 P.2d 764, 766 (1949). A trust of real estate will comply with the statute of frauds if it sets forth with reasonable definiteness the trust's property, its beneficiaries, and its purpose. Restatement (Second) of Trusts § 46 (1959). Furthermore, under Arizona law, the requisite writing need not be in a single document. *See Cashion v. Bank of Arizona,* 30 Ariz. 172, 179–80, 245 P. 360 (1926); *see also Daley v. Earven,* 131 Ariz. 182, 185, 639 P.2d 372, 375 (App.1981) (court will order specific performance if agreement appears in several documents identifiable with certainty); *Favour v. Joseff,* 16 Ariz.App. 470, 475, 494 P.2d 370, 375 (App.1972) (agreement need not be a single document).

We conclude that even without an executed trust agreement, the documents satisfy the statute of frauds. The August 16, 1983 quitclaim deed conveyed the residence from Milton and Luella to Milton as trustee of the Trust. It was signed by Milton and Luella and listed the beneficiaries of the Trust as Michele Anderson, Robin Barrett and Jeff Barrett. The Certificate and Abstract of Trust Existence and Authority for the Bochat Revocable Trust summarized the operative provisions of the Trust, was signed by

Milton and Luella, and identified the beneficiaries as Milton and Luella and the three people named on the quitclaim deed. The two documents were recorded simultaneously in the Maricopa County Recorder's Office on August 17, 1983; the quitclaim deed shows the recording number 83–330001, and the Certificate shows the number 83–330002. Taken together, these documents described the subject matter and identified the beneficiaries and property in the Trust.

## III. CONCLUSION

We affirm the judgment for World but reverse the judgment for Hall and remand for further proceedings consistent with this opinion.

RYAN and PATTERSON, JJ., concur.