In re Kathryn Olegna STEINER, Debtor.

LR Partners, L.L.C., an Arizona limited liability company, Movant,

v.

Kathryn Olegna Steiner, and Ralph M. McDonald, Chapter 13 Trustee, Defendant.

No. B-00-04519-PHX-RJH.

United States Bankruptcy Court, D. Arizona.

July 20, 2000.

Memo. 1999–343, 1999 WL 818789 (Tax Ct.1999).

**99.** FRCP 56(d), incorporated by FRBP 7056.

Allan D. NewDelman, Allan D. NewDelman, P.C., Phoenix, AZ, for Debtor.

Richard J. Rubin, Rubin & Rubin, Phoenix, AZ, for Movants.

Ralph M. McDonald, Phoenix, AZ, for Chapter 13 Trustee.

## OPINION

RANDOLPH J. HAINES, Bankruptcy Judge.

Kathryn Steiner filed this chapter 13 case on May 1, 2000. That filing date was after her secured creditor Ocwen Federal Bank had conducted a trustee's sale on her home on April 17, 2000, but was prior to the recordation of the trustee's deed resulting from that sale, on May 2, 2000. This raises the question of whether a chapter 13 debtor can assert the rights of a bona fide purchaser under Bankruptcy Code § 544(a)(3) to avoid the sale of her home, because the deed resulting from

that sale was not of record as of the date of the petition.

## FACTUAL BACKGROUND

Kathryn Steiner's home was subject to a deed of trust in favor of Ocwen Federal Bank FSB ("Ocwen"), securing an original principal amount of $59,850.00. She defaulted on the debt sometime in 1999, but on November 30, 1999 entered into a forbearance agreement with Ocwen, pursuant to which Ocwen agreed to forbear in pursuit of its collection remedies if Ms. Steiner made a down payment in the amount of $2,407.85 that same day and made a $632.00 monthly payment from January 1 to May 1, 2000. Ms. Steiner made the down payment and the January payment, but no payments thereafter, while she attempted to negotiate with Ocwen an assignment of her anticipated income tax refund. The forbearance agreement specifically permitted Ocwen to continually postpone its foreclosure action and take all steps necessary to maintain its pending status.

Ocwen held its trustee's sale on April 17, 2000, where the property was purchased by a third party purchaser, 402 Property Wholesalers, for a bid of $76,866.00, just slightly more than the total debt allegedly due Ocwen of $76,865.37. The purchaser paid the bid price the next day, and a trustee's deed in favor of the purchaser was executed on April 24, 2000, which was subsequently recorded in the County Recorder's Office on May 2, 2000. That same day there was also recorded a special warranty deed from 402 Property Wholesalers to LR Partners LLC, which had been dated April 18 and was notarized on April 19, 2000. At the evidentiary hearing on this matter, the principal of LR Partners testified that LR Partners is in the business of buying properties at trustee's sales and foreclosure sales. He also testified that

402 Property Wholesalers was also in the business of buying properties at such sales, and that he and the principals of 402 Property Wholesalers were friends but otherwise had no connection.[1] He testified that LR Partners purchased the property from 402 Property Wholesalers for the amount it had paid for the property.

Steiner filed her chapter 13 case on May 1, 2000. LR Partners filed a motion for relief from the stay to permit it to proceed with a state law action to evict the debtor. The debtor responded and also filed an adversary proceeding seeking to set the trustee's sale aside. The final hearing on LR Partners' lift stay motion was held on July 13, 2000, at which the Court heard testimony from Kathryn Steiner and from the principal of LR Partners and then took the matter under advisement.

## CHAPTER 13 DEBTORS' STANDING TO ASSERT AVOIDING POWERS

 Steiner's principal argument why stay relief should be denied and the trustee's sale avoided is to assert the rights of a bona fide purchaser pursuant to Bankruptcy Code § 544(a)(3). This raises the threshold question, however, of whether a chapter 13 debtor may assert those avoiding powers.

Unlike Bankruptcy Code § 1107 applicable to chapter 11 debtors in possession, Bankruptcy Code § 1303 does not give chapter 13 debtors the rights and powers of a trustee under § 544. Although a handful of bankruptcy court decisions from the 1980's held that chapter 13 debtors could exercise the trustee's avoiding powers, the reasoning of the Fifth Circuit Court of Appeals in *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292 (5th Cir.1997) is more convincing. The lack of any express authority in the Code granting chapter 13 debtors such powers,

1. This lack of relationship is questionable given that both seller and buyer claimed an exemption from the requirement to file an affidavit stating the purchase price paid by claiming that the deed was issued on "partition" of the property. A.R.S. § 11-1134(b)(5).

particularly in light of the significant differences between § 1107 and § 1303, means that Congress did not elect to confer such extraordinary powers on chapter 13 debtors. The Fifth Circuit's reasoning finds further substantial support in the Supreme Court's recent decision holding that creditors do not have rights that the Code expressly grants only to the trustee under § 506(c). *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* —— U.S. ——, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

■ There is, however, another potential source of the avoiding powers for chapter 13 debtors other than § 1303, found in § 522(h).[2] The Ninth Circuit has held that for a transfer to be avoidable under § 522(h), five conditions must be satisfied: (1) the transfer must not have been a voluntary transfer by the debtor; (2) the debtor must not have concealed the property; (3) the trustee must not have attempted to avoid the transfer; (4) the debtor must exercise an avoidance power that is usually used by the trustee and that is listed in § 522(h); and (5) the transferred property must be of a kind that the debtor would have been able to claim as exempt from the estate if the trustee had avoided the transfer pursuant to § 522(g). *DeMarah v. United States (In re DeMarah),* 62 F.3d 1248, 1250 (9th Cir.1995).

The evidence received at the lift stay hearing demonstrates that this debtor has satisfied the first two conditions, and the docket in this case reflects that the third condition is satisfied. The fourth condition is satisfied because the avoiding power of § 544 is specifically referenced in § 522(h)(1). This leaves only the fifth condition.

The evidence received at the lift stay hearing, and the contents of the Court's files, support the conclusion that the property was the debtor's homestead and that her equity in the property was well within the $100,000.00 limit of Arizona's homestead exemption. Debtor's Schedule A lists the current market value of the property as $98,000, and she claims its equity value of $28,000 on her homestead exemption in Schedule C.

Consequently this chapter 13 debtor does have the right, by virtue of § 522(h), to exercise the trustee's avoiding powers under § 544 with respect to her homestead.

### NO HYPOTHETICAL BONA FIDE PURCHASER COULD EXIST

■ In order to prevail under § 544(a), the debtor must demonstrate that a bona fide purchaser of the real property, as of the time of the commencement of the case, would prevail against the rights of the purchaser under the then unrecorded trustee's deed. To determine who would prevail in such a hypothetical contest requires an analysis of the Arizona statutes governing trustee's sales.

A.R.S. § 33–808(A)(3) requires a notice of the time and place of the trustee's sale be recorded in the office of the County Recorder of the county where the property is situated. Thereafter, the sale may be postponed by public declaration at the time and place last appointed for the sale, and no other notice of the postponed date is required. A.R.S. § 33–810(B). Because it is recorded in the County Recorder's Office, the notice of trustee's sale provides the world constructive notice that a sale is scheduled. A.R.S. § 33–818 (a "notice of sale ... shall from the time of being recorded impart notice of its content to all persons"); *Bisbee v. Security Nat. Bank &*

---

**2.** Section 522(h) provides: "The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and (2) the trustee does not attempt to avoid such transfer."

*Trust Co. of Norman Okla. (In re Bisbee),* 157 Ariz. 31, 754 P.2d 1135 (1988).

Although the notice of trustee's sale was not submitted in evidence at the lift stay hearing, the trustee's deed upon sale was received in evidence without objection. By A.R.S. § 33–811(B), this trustee's deed raises "the presumption of compliance with the requirements of the deed of trust and this chapter relating to the exercise of the powers of sale and the sale of the trust property, including recording, mailing, publishing and posting of notice of sale and the conduct of sale." Since no evidence was submitted to rebut that presumption, the trustee's deed suffices to demonstrate that the notice of trustee's sale was in fact duly recorded as required by the statute.

The Arizona statute further provides that "the sale shall be completed on payment by the purchaser of the bid price in a form satisfactory to the trustee. The subsequent execution, delivery and recordation of the trustee's deed as prescribed by § 33–811 are ministerial acts." A.R.S. § 33–810(A). The evidence established that the bid price was paid, in form satisfactory to the trustee, by 5:00 p.m. of the day following the sale as required by A.R.S. § 33–811. Consequently, by statute, the sale was "completed" on that day. The question therefore becomes whether a bona fide purchaser, consciously unaware of the fact of the sale, could have acquired good title to the property by a conveyance from Ms. Steiner on May 1, 2000, prior to the recordation of the trustee's deed.

For two independent reasons, I conclude that there could be no hypothetical bona fide purchaser who could have acquired rights superior to that of the purchaser at the trustee's sale.

First, the legislature took pains to specify that the recordation of the trustee's deed was a mere "ministerial act." This language must have been intended by the legislature to preclude courts from giving some more operative significance to the requirement for the recordation of the trustee's deed. This raises the question of what possible operative significance the "ministerial act" language was meant to preclude. It could have been intended to override the general requirement that interests in land may only be conveyed by a written instrument signed, delivered and duly acknowledged by the party disposing of the estate. A.R.S. § 33–401. Such a provision would seem to be unnecessary or duplicative, however, in light of the preceding sentence providing that the sale is complete upon payment of the bid price, which itself might be deemed sufficient to overcome the more general requirements of A.R.S. § 33–401 when dealing with the more particularized type of conveyance by trustee's sales. Consequently the more logical interpretation of the intent of the "ministerial act" provision is to exempt trustee's sales from the more general requirements of A.R.S. §§ 33–411 and 33–412, which provide that unrecorded deeds are "void as to creditors and subsequent purchasers for valuable consideration without notice." Since the sale is already deemed complete upon payment of the bid price and that sale is binding as to the parties pursuant to A.R.S. § 33–412(B), the "ministerial act" provision must have been included to override the more general law that such transactions would be void as to creditors and subsequent purchasers for valuable consideration without notice until the deed is recorded.[3]

---

**3.** The Arizona Legislature has enacted an amendment to A.R.S. § 33–810, effective on July 18, 2000, to add the following language at the end of that paragraph: "If the trustee's deed is recorded in the county in which the trust property is located within 15 business days after the date of the sale, the trustee's sale is deemed perfected at the appointed date and time of the trustee's sale." Although this amendment is not effective as to the sale which took place before its effective date, it reflects a legislative intent that is consistent with the interpretation the Court here adopts, provided that the recordation occurs within 15 days of the sale date. Here, the recordation occurred precisely on the 15th day after the sale. I conclude the intent of this amendment was to clarify, rather than change, the effect

Second, this conclusion is bolstered by the constructive notice given by the recorded notice of trustee's sale. Such a recorded notice gives constructive notice to the world that a trustee's sale was scheduled. A.R.S. § 33–818. Such constructive notice puts potential purchasers on inquiry notice of what they would have learned if they had inquired of the trustee, whose name and address (and that of any successor trustee) must be provided in the recorded notice of sale. A.R.S. § 33–808(C)(4) and A.R.S. § 33–804. *Hall v. World Sav. & Loan Ass'n,* 189 Ariz. 495, 943 P.2d 855 (App.1997)("Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is ... equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose."). Consequently if a sale has occurred prior to the date of purchase by a third party, such a third party could not be a bona fide purchaser even though the trustee's deed had not yet been recorded.

■ While the Bankruptcy Code gives the trustee the status of a bona fide purchaser, it is state law that defines whether even a hypothetical bona fide purchaser could exist under the facts. *Washburn & Roberts, Inc. v. Park East (In re Washburn & Roberts, Inc.),* 795 F.2d 870, 872 (9th Cir.1986). Under Arizona law, the unrecorded trustee's deed (which was dated April 17, 2000 and acknowledged by the trustee on April 24, 2000), is specifically made "valid and binding" as to "all subsequent purchasers with notice thereof." A.R.S. § 33–412(B). Since the recorded notice of trustee's sale gave the world constructive notice of the pendency of that sale and, after its scheduled date, notice of what would have been learned by inquiry

of the trustee, the unrecorded trustee's deed is "valid and binding" as to all such potential, hypothetical, otherwise innocent purchasers. This means no bona fide purchaser could exist.

In *Hamilton, supra,* the Fifth Circuit arrived at precisely this same conclusion applying Texas law, and I do not perceive any material difference in Arizona law that would change its reasoning or result in Arizona. I therefore adopt that analysis.

In addition to the analysis of *Hamilton,* it has long been recognized that where there is constructive notice effective as to the world of an interest in property, such as by physical possession of the property, no hypothetical bona fide purchaser could acquire rights superior to the rights that would have been learned upon reasonable inquiry, and consequently such constructive notice defeats the strong arm clause of § 544(a)(3). *Briggs v. Kent (In re Professional Investment Properties of Am.),* 955 F.2d 623 (9th Cir.1992), *cert. denied* 506 U.S. 818, 113 S.Ct. 63, 121 L.Ed.2d 31, *reh'g denied,* 506 U.S. 1015, 113 S.Ct. 638, 121 L.Ed.2d 569; *Probasco v. Eads (In re Probasco),* 839 F.2d 1352 (9th Cir.1988); *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982); *Jonas v. Walgreen Ariz. Drug Co. (In re Wonderfair Stores, Inc. of Ariz.),* 511 F.2d 1206 (9th Cir.1975)(Act case).

## VALIDITY OF SALE

■ At the lift stay hearing, debtor's counsel sought to challenge the validity of this sale by reference to obvious errors in the trustee's deed.[4] Since the deed properly identified the parties and the nature of the conveyance, identified the property by legal description, and provided the correct instrument number for the deed of

of the statute prior to amendment, except to impose a 15–day limit on the grace period. Bankruptcy Code § 546(b) shields such grace periods from § 544 attacks.

4. For example, although the property was correctly stated to be in Maricopa County and no argument has been made that there was an

error in its legal description, it referenced the deed of trust as being recorded in the Office of the Recorder of Maricopa California, that the trustee had complied with the applicable statutory requirements of the state of California and had complied with the California Civil Code.

trust, and the statute provides that the recordation of the deed is a mere "ministerial" act, the Court does not find these errors to affect the validity of the trustee's deed or the trustee's sale.

■ Debtor testified that she understood the trustee's sale had not merely been postponed, but had been cancelled. That understanding, however, is belied by the express terms of the forbearance agreement. Therefore her belief, however honest and justified it might have been, does not provide adequate cause to vacate the trustee's sale.

### CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the Court holds that as of the date of the petition the debtor had no legal or equitable interest in the property, nor any legal grounds to avoid the trustee's sale. Consequently the motion of LR Partners for relief from the automatic stay, so that it may proceed with state law eviction procedures, must be granted.