177 P.3d 305

**In re the Matter of the ESTATE OF Warren H. PARKER, Jr., Deceased.**

**Dometri Investments, LLC, an Arizona limited liability company; and Choice Property Group, LLC, an Arizona limited liability company, Appellees,**

v.

**Janet Parker Lind, individually and as trustee of the Warren H. Parker, Jr. Separate Property Trust, dated December 6, 1999, Appellant.**

No. 1 CA–CV 07–0072.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 26, 2008.

Gust Rosenfeld PLC By Scott A. Malm, Matthew D. Bedwell, Phoenix, Attorneys for Appellees.

Murphy Law Firm, Inc. By Thomas J. Murphy, Phoenix, Attorneys for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 This appeal challenges the order quieting title in favor of Appellee Dometri Investments, LLC ("Dometri") and against Appellant Janet Parker Lind, individually and as trustee of the Warren H. Parker, Jr. Separate Property Trust. Specifically, we are asked to resolve whether Dometri can claim title to real property even though the decedent's widow, Ruth Parker, had no legal interest in the property she transferred pursuant to Arizona Revised Statute ("A.R.S.") section 14–3901 (2005). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶ 2 In May 1983 Warren Parker, Jr., ("Parker") purchased real property "as his sole and separate property." His wife, Ruth Parker, simultaneously recorded a Disclaimer Deed, which acknowledged that she had "no past or present right, title, interest, claim or lien of any kind or nature" against the property.

¶ 3 Years later, Parker created the Warren H. Parker, Jr. Separate Property Trust (the "Trust"). He designated his adult children from a previous marriage, Janet Lind ("Lind") and James W. Parker, as the Trust beneficiaries. He also prepared a pour-over will, which directed that any property in his estate at the time of his death be placed in the Trust and distributed according to its terms. The property was then placed in the Trust.

¶ 4 Parker removed the property from the Trust in March 1995 by Quit Claim Deed which transferred title back to "Warren H. Parker, Jr., a married man as his sole and separate property." He died in July 2004.

¶ 5 Parker's adult children did not act to return the property to the Trust. Instead, nearly eight months after Parker's death, an

Affidavit for Transfer of Title to Real Property (the "Affidavit") was recorded and filed in the superior court. The Affidavit was signed by Mrs. Parker, who was then, as noted during oral argument, in a nursing home. It stated that Parker died without a will and she was the sole successor-in-interest to the property.[1]

¶ 6 Mrs. Parker subsequently signed a deed which transferred the property to Choice Property Group, LLC ("Choice"). Choice then deeded the property to Dometri. Both warranty deeds were recorded on April 11, 2005.

¶ 7 After being served, Lind filed a Notice of Objection to Distribution of Estate and a Notice of Lis Pendens. Her objection challenged the Affidavit, stated that her father had a will, that all property was to be placed in his Trust, and that Mrs. Parker had no authority to dispose of the property. The lis pendens also noted that Mrs. Parker "ha[d] no title to the property and no power to convey in fact or by law."

¶ 8 Dometri unsuccessfully attempted to get Lind to execute a quitclaim deed to the property. Dometri then filed a quiet title action.[2] Lind answered, filed a counterclaim for financially exploiting a vulnerable adult, and filed a third party complaint against Choice for fraud, deceptive trade practices, and financial exploitation of a vulnerable adult.

¶ 9 Dometri and Lind filed cross-motions for summary judgment.[3] Dometri argued that Choice was entitled to rely upon the Affidavit executed by Mrs. Parker and that Dometri, having purchased the property from Choice, was entitled to the protections of A.R.S. §§ 14–3910 (2005), 14–3971 (Supp. 2007) and 14–3972(C) (2005). Lind argued that Mrs. Parker had no ownership or other interest in the property and that Choice and

Dometri, as "subsequent transferee[s]," could not acquire "[any] interests ... greater than Ruth Parker's interest."

¶ 10 The superior court granted Dometri's motion and denied Lind's cross-motion. The court signed a judgment which quieted title in favor of Dometri, quashed Lind's Notice of Lis Pendens, and awarded Dometri its attorneys' fees and taxable costs.[4] Lind filed a notice of appeal, and we have jurisdiction pursuant to A.R.S. § 12–2101(J) (2003).[5]

## DISCUSSION

¶ 11 Lind argues that the superior court erred by granting Dometri's summary judgment motion and quieting title. She also challenges the attorneys' fees award.

### A.

¶ 12 Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). We review de novo a motion for summary judgment to determine the existence of any genuine issues of material fact and whether the law was properly applied. *Eller Media Co. v. City of Tucson,* 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000). We view the facts and any inferences in a light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction,* 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

¶ 13 Lind first argues that neither Choice nor its successor, Dometri, could acquire title to the property from Mrs. Parker because she had no ownership interest to convey. We independently review the argument because it involves questions of statutory interpretation. *Melgar v. Campo,* 215

---

1. The record is silent about who prepared, presented, filed or recorded the Affidavit that Mrs. Parker signed.

2. Dometri filed an amended complaint on December 12, 2005.

3. Choice joined Dometri's response to Lind's summary judgment motion.

4. Lind has also filed a Petition for Payment of Damages Due to Wrongful Transfer against Mrs. Parker. She is seeking damages from Mrs. Parker for the "unauthorized and unlawful transfer of title" to the Property.

5. A.R.S. § 12–2101(J) provides jurisdiction for an appeal "[f]rom a judgment, decree or order entered in any formal proceedings under title 14."

Ariz. 605, 606, ¶ 6, 161 P.3d 1269, 1270 (App. 2007); *see also Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App.2005) ("Matters of statutory interpretation are questions of law, which we review de novo.").

¶ 14 Real property and personal property can be transferred by affidavit outside of formal probate. *See* A.R.S. § 14–3971. The probate code provides a simplified procedure that allows real property to be transferred by affidavit if the property's assessed value does not exceed $75,000. *See* A.R.S. § 14–3971(E).[6]

¶ 15 The statutory-simplified-process requires that a person, who claims to be the successor to a decedent's interest in real property, file an affidavit of succession describing the decedent's interest in the property, and stating the following under penalty of perjury:

1. Either:

(a) An application or petition for the appointment of a personal representative is not pending and a personal representative has not been appointed in any jurisdiction and the value of all real property in the decedent's estate located in this state, less liens and encumbrances against the real property, does not exceed seventy-five thousand dollars as valued at the date of death. The value of the decedent's interest in that real property shall be determined from the full cash value of the property as shown on the assessment rolls for the year in which the decedent died, except that in the case of a debt secured by a lien on real property the value shall be determined by the unpaid principal balance due on the debt as of the date of death.

(b) The personal representative has been discharged or more than one year has elapsed since a closing statement has been filed and the value of all real property in the decedent's estate, wherever located, less liens and encumbrances, does not ex-

ceed seventy-five thousand dollars as valued as of the date of the affidavit. The value of the decedent's interest in that real property is determined from the full cash value of the property as shown on the assessment rolls for the year in which the affidavit is given, except that if a debt is secured by a lien on real property, the value is determined by the unpaid principal balance due on the debt as of the date of the affidavit.

2. Six months have elapsed since the death of the decedent as shown in a certified copy of the decedent's death certificate attached to the affidavit.

3. Funeral expenses, expenses of last illness, and all unsecured debts of the decedent have been paid.

4. The person or persons signing the affidavit are entitled to the real property by reason of the allowance in lieu of homestead, exempt property or family allowance, by intestate succession as the sole heir or heirs, or by devise under a valid last will of the decedent, the original of which is attached to the affidavit or has been probated.

5. No other person has a right to the interest of the decedent in the described property.

6. No federal or Arizona estate tax is due on the decedent's estate.

A.R.S. § 14–3971(E).

¶ 16 After the statutory affidavit of succession is filed, the statute protects anyone who purchases the real property. In fact, and pursuant to A.R.S. § 14–3972(C), a person who purchases real property from the person designated as successor in a certified copy of an affidavit made pursuant to A.R.S. § 14–3971 "is entitled to the same protection as a person purchasing from ... a distributee who has received a deed of distribution from a personal representative, as provided in § 14–3910."[7] That section, in turn, provides:

---

6. Personal property can be transferred by affidavit if all personal property does not exceed $50,000. A.R.S. § 14–3971(B). Prior to 2006, the simplified procedure was available only if the assessed value of real property was less than $50,000. *See* 2006 Ariz. Sess. Laws, ch. 26, § 1 (2d Reg.Sess.).

7. A "distributee" is "any person who has received property of a decedent from that person's personal representative other than as a creditor or purchaser." A.R.S. § 14–1201(15) (2005).

If property distributed in kind ... is acquired for value by a purchaser from ... a distributee who has received [a] ... deed of distribution from the personal representative, ... the purchaser ... takes title free of rights of any person interested in the estate and incurs no personal liability to the estate, whether or not the distribution was proper or supported by court order and whether or not the authority of the personal representative was terminated prior to execution of the ... deed.

A.R.S. § 14–3910. The statute further provides that the purchaser "need not inquire whether a personal representative acted properly in making the distribution in kind" or "whether the authority of the personal representative had terminated prior to the distribution" to be protected. *Id.*

¶ 17 Applying these interrelated statutes to the facts of this case, we agree with Lind that A.R.S. § 14–3971(E) does not authorize an affiant to transfer title to real property in which he or she has no legal interest. Nevertheless, the plain language of A.R.S. §§ 14–3972(C) and 14–3910 clearly provides that a purchaser relying upon an affidavit of succession meeting the requirements of A.R.S. § 14–3971(E) takes title "free of rights of any person interested in the estate," regardless of the propriety of the sale.

¶ 18 Here, the parties do not dispute that the affidavit executed by Mrs. Parker met all of the statutory requirements. Consequently, even though Mrs. Parker had no ownership or other interest to convey, Dometri and its predecessor, Choice, are statutorily protected against claims by the estate.

¶ 19 Lind, however, contends that A.R.S. § 14–3971(G) compels a different result in this case. Section 14–3971(G) provides that "[t]his section does not limit the rights of heirs and devisees under § 14–3901."[8] Section 14–3901, in turn, generally provides that title to a decedent's property passes to his heirs or devisees at the time of his death. *See* A.R.S. § 14–3901 ("In the absence of administration, the heirs and devisees are entitled to the estate in accordance with the

terms of a probated will or the laws of intestate succession."); *Roberts v. Robert,* 215 Ariz. 176, 179, ¶ 12, 158 P.3d 899, 902 (App. 2007).

¶ 20 We note that A.R.S. § 14–3971(G) is limited by its terms to "this section," meaning A.R.S. § 14–3971. Thus, we agree that an affiant claiming to be the successor to a decedent's interest in real property may not, by affidavit or otherwise, limit or extinguish the rights of the decedent's true heirs or devisees. The same, however, cannot be said of subsequent purchasers relying upon the affiant's sworn statements. Unlike A.R.S. § 14–3971, section 14–3972(C) omits any reference to the rights of heirs or devisees, and A.R.S. § 14–3910 specifically provides that a purchaser takes title "free of rights of any person interested in the estate." *See also In re Estate of Zaritsky,* 198 Ariz. 599, 602, ¶ 7, 12 P.3d 1203, 1206 (App.2000).

¶ 21 Moreover, and assuming only for argument that Mrs. Parker either intentionally defrauded Lind and her brother or negligently signed the affidavit, A.R.S. § 14–1106 (2005) provides that "[i]f fraud has been perpetrated in connection with any proceeding or in any statement filed under this title ... any person injured thereby may obtain appropriate relief against the perpetrator of the fraud ... other than a bona fide purchaser, benefiting from the fraud, whether innocent or not." Thus, the Legislature recognized that fraud could occur but made the policy decision to only give those defrauded a separate action against the perpetrators.

¶ 22 Given the plain, clear wording of A.R.S. §§ 14–3972(C), 14–3910 and 14–1106, a purchaser of real property relying upon an affidavit of succession is protected from subsequent claims by heirs or devisees who would otherwise have a superior right to the property, even if the affidavit of succession includes false or inaccurate information. Thus, because Lind did not raise a genuine issue of material fact that implicated Dometri in any fraud below or during oral argument, summary judgment in favor of Dometri was proper. While Lind may have some recourse

---

8. Prior to 2006, A.R.S. § 14–3971(G) read: "Nothing in this section shall limit the rights of

heirs and devisees under § 14–3901." 2006 Ariz. Sess. Laws, ch. 26, § 1 (2d Reg.Sess.).

against Mrs. Parker or others for any alleged fraud or other wrongdoing,[9] Dometri is statutorily relieved of any liability to the estate.

■ ¶ 23 Lind next argues that *Chantler v. Wood,* 6 Ariz.App. 134, 430 P.2d 713 (1967), precludes protection for Dometri as a "bona fide purchaser" because Mrs. Parker specifically disclaimed any interest in the property in 1983.[10] She contends that the recorded disclaimer deed provided actual or constructive notice to all subsequent parties that Mrs. Parker had no ownership interest in the property. We disagree.

¶ 24 The statute, A.R.S. § 14–3972(C), protects a "purchaser" relying upon an affidavit of succession and makes no mention of a "bona fide purchaser." Moreover, A.R.S. § 14–3910 expressly relieves a purchaser from any responsibility to inquire into the propriety of the transaction and/or the authority of the person entering into the transaction.[11]

¶ 25 Even assuming a "bona fide purchaser" requirement could be implied in A.R.S. § 14–3972(C), the disclaimer deed only stated that Mrs. Parker had "no past or present right, title, interest, claim or lien" against the property. There is nothing in the deed that precluded Mrs. Parker from acquiring an interest in the property after 1983, whether in a will or by intestate succession. Thus, nothing in the disclaimer deed is inherently inconsistent with Mrs. Parker's later representations that she was "entitled to decedent's property by intestate succession as decedent died without a [will]," and that "[n]o other person [had] a right to the interest of the decedent in the [Property]."

¶ 26 Finally, Lind argues that the superior court's construction of the probate code es-

sentially "eviscerates title to any parcel of real estate" and extends an "open invitation to fraud." Dometri, on the other hand, claims that the statutory-simplified-transfer process includes safeguards designed to prevent such abuses.

¶ 27 The Legislature has defined the circumstances where title to real property can be transferred by affidavit of succession. A.R.S. § 14–3971(E). For example, property cannot be transferred by affidavit without a certified copy of the death certificate. A.R.S. § 14–3971(E)(2). And, the property cannot be transferred until six months have elapsed after the death of the decedent. *Id.* The six month waiting period would allow potential heirs and devisees to come forward and protect their interests.

¶ 28 Additionally, an affiant must expressly state that the contents of the affidavit of succession are "true and material" and acknowledge that "any false statement in the affidavit may subject the person ... to penalties relating to perjury and subornation of perjury." A.R.S. § 14–3971(E). Thus, an affiant may be criminally charged and/or subject to civil liability for any alleged fraudulent conduct or other wrongdoing. *See also* A.R.S. § 14–1106. The record in this case reveals that Lind is presently pursuing an action against Choice and Mrs. Parker for fraud and related claims.

¶ 29 Although we are compelled to conclude that Dometri has acquired title to the property "free of rights of any person interested in the estate," we recognize Lind's concern that the statutory safeguards may not adequately deter the unscrupulous from procuring title by soliciting fraudulent affidavits of succession and invoking the protections of A.R.S. §§ 14–3972(C) and 14–3910.[12]

---

9. The statute would also allow Mrs. Parker recourse against Choice if she could demonstrate that she was defrauded into signing the affidavit.

10. *Chantler* provides that "[r]ecording a deed gives constructive notice to persons who might otherwise have acquired the position of bona fide purchasers." *Chantler,* 6 Ariz.App. at 137, 430 P.2d at 716.

11. Our Legislature did not require purchasers to do a title search before purchasing the property. To do so, on what it determined to be limited value real property, would undermine the simpli-

fied-statutory-process and subject the transfer to title challenges for a period longer than the statutory process here. Moreover, the Legislature, in making the choice not to permit claims against purchasers for value once a proper affidavit was filed and recorded, balanced expedience against appropriate but not comprehensive safeguards against fraud.

12. Because there is no admissible evidence in the record to the contrary, we do not suggest that either Choice or Dometri has engaged in any fraudulent conduct.

The Legislature is the body with the authority to consider the problem and determine whether additional protections should be included to protect heirs and devisees when title to real property is transferred by affidavit.[13] We decline to judicially create such protections.

### B.

¶ 30 The superior court awarded Dometri attorneys' fees pursuant to A.R.S. § 12–1103 (2003). Lind contends that the court erred because "[t]his is a unique case and one of first impression."

¶ 31 The trial court has discretion to determine whether to award attorneys' fees to a party who prevailed in a quiet title action and otherwise complied with the requirements of A.R.S. § 12–1103(B).[14] *Scottsdale Mem'l Health Sys., Inc. v. Clark,* 164 Ariz. 211, 215, 791 P.2d 1094, 1098 (App. 1990). We will not disturb the fee award on appeal if there is any reasonable basis for the court's decision. *State Farm Mut. Auto. Ins. Co. v. Arrington,* 192 Ariz. 255, 261, ¶ 27, 963 P.2d 334, 340 (App.1998).

¶ 32 We have previously identified various factors the trial courts may consider in determining whether to grant attorneys' fees pursuant to A.R.S. § 12–1103.[15] *See Clark,* 164 Ariz. at 215–16, 791 P.2d at 1098–99. The factors include: (1) the merits of the claim or defense presented by the unsuccessful party; (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought; (5) the novelty of the legal question presented; (6) whether the successful party's claim or defense was adjudicated previously in this jurisdiction; and (7) whether an award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues. *Id.*

¶ 33 While this case presented an issue of first impression, we do not believe the novelty of the legal question alone compels reversal of the fee award. *See Indian Vill. Shopping Ctr. Inv. Co. v. Kroger Co.,* 175 Ariz. 122, 125, 854 P.2d 155, 158 (App.1993) (declining to hold that the trial court abused its discretion in awarding attorneys' fees "simply because ... the case raises a new or novel issue in this jurisdiction"). Although there are no cases specifically addressing A.R.S. § 14–3972(C), the trial court concluded, as we do, that the result was compelled by the plain language of the statute. Accordingly, we decline to find that the court abused its discretion in awarding Dometri attorneys' fees.

### C.

¶ 34 Dometri requests attorneys' fees on appeal pursuant to A.R.S. § 12–1103(B). After considering the factors, and in the exercise of our discretion, we deny the request. Dometri, however, is entitled to recover its

13. California has a similar affidavit procedure for real property of small value. The California statute only protects "[a] person acting *in good faith and for a valuable consideration* with a person designated as a successor of the decedent to a particular item of [real] property." Cal. Prob.Code § 13203 (emphasis added) (West 1991). The California Probate Code also provides that the successor remains liable to persons having a superior right to the property and, in the event the affidavit was fraudulently executed, he or she "is liable to the person having a superior right for three times the fair market value of the property." Cal. Prob.Code § 13205 (West Supp.2008). These remedies are expressly "in addition to any remedies available by reason of any fraud or intentional wrongdoing." Cal. Prob.Code § 13208 (West 1991).

14. The parties do not dispute that the statutory criteria were met; Dometri asked Lind to execute a quitclaim deed more than 20 days prior to bringing its quiet title action and tendered $5 for the execution and delivery of the deed.

15. Essentially, the trial court may consider the same factors that are generally considered in determining whether to award attorneys' fees pursuant to A.R.S. § 12–341.01(A) (2003). *See Clark,* 164 Ariz. at 215, 791 P.2d at 1098; *see also Assoc. Indem. Corp. v. Warner,* 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985) (identifying factors that may be useful to trial judges in determining whether to award fees pursuant to A.R.S. § 12–341.01(A) ).

costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21(a).

## CONCLUSION

¶ 35 For the foregoing reasons, we affirm the summary judgment in favor of Dometri and the award of attorneys' fees.

CONCURRING: PHILIP HALL, Presiding Judge and G. MURRAY SNOW, Judge.