224 P.3d 938

**In the Matter of the ESTATE OF Rodney K. OLSON, Deceased.**

**Shannon Beck, as personal representative of the Estate of Rodney K. Olson, Third Party Plaintiff/Appellee,**

v.

**Herman Deem and Ruby Deem, husband and wife; Landmarc Capital & Investment Company, an Arizona corporation; First American Title Insurance Company, an Arizona corporation, Third Party Defendants/Appellants.**

**No. 1 CA–CV 08–0675.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 14, 2010.

---

Sherman & Howard, LLC by Nathaniel B. Rose, Jamey G. Anderson, Phoenix, Attorneys for Third Party Plaintiff/Appellee.

Gust Rosenfeld, PLC by Charles W. Wirken, Phoenix, Attorneys for Third Party Defendants/Appellants.

## OPINION

IRVINE, Judge.

¶ 1 Appellants Herman and Ruby Deem (collectively "Deem"), the assignee of the beneficial interest in a deed of trust, Landmarc Capital & Investment Company ("Landmarc"), the lender/beneficiary, and First American Title Insurance Company ("First American"), the trustee, appeal the trial court's determination that a deed of trust, acquired by Landmarc from an heir who obtained title to the property through a transfer affidavit, was invalid. For the following reasons, we reverse the trial court's decision and remand with instructions that judgment be entered holding that although the estate holds title to the property, it is subject to the deed of trust held by Deem.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Rodney Olson ("Olson") died on October 1, 2003. He was single at the time of his death and was survived by his three adult children, Shannon Beck ("Shannon"), Sherry Vandervort ("Sherry"), and Todd Olson ("Todd"). Olson's primary asset was his home in Glendale, Arizona. The home was subject to a mortgage held by Midland Mortgage ("Midland") and payments were current at the time of Olson's death.

¶ 3 Soon after Olson's death, Sherry, Shannon, and Todd met and agreed they would let the house go into foreclosure because they did not want to pay the debt secured by the home. The home remained vacant and mortgage payments were not paid for approximately eight months. In June 2004, Sherry changed her mind and moved into the home. Sherry paid the back mortgage payments

and bills (totaling approximately $11,000) from her father's life insurance proceeds in order to avoid a trustee sale. She made two more payments (until August 2004) and then stopped making payments. Midland again noticed a trustee's sale for April 29, 2005. To avoid the sale, Sherry sought to refinance the Midland loan through Landmarc.

¶ 4 Sherry completed a mortgage loan application and on March 18, 2005, she executed a deed of trust, appointing First American as trustee and Landmarc as beneficiary. It is undisputed that Sherry executed the deed before she had title to the property. When she represented to Landmarc that she needed legal counsel, Landmarc directed her to Allan Sobol ("Sobol").

¶ 5 Sobol informed Sherry that she would lose the home unless she obtained title by having Shannon and Todd sign waivers disclaiming their rights in it. On or around April 21, 2005, Shannon and Todd both signed quitclaim deeds, prepared by Sobol, disclaiming their interest in the home. Sherry agreed to pay Shannon $25,000 as compensation for her interest in the home; Todd did not request compensation for his interest.

¶ 6 On April 29, 2005, Sherry executed an Affidavit for Transfer of Real Property Title ("Affidavit") which transferred title of the home to her pursuant to Arizona Revised Statutes ("A.R.S.") section 14–3971(E) (2005).[1] In the Affidavit, Sherry stated that (1) there was "no other living heir" besides Sherry;[2] (2) the value of Olson's home did not exceed $50,000;[3] and (3) Olson died without a valid will.[4]

¶ 7 Based on this Affidavit, Sherry obtained title to the home and refinanced with Landmarc for $155,000. On June 9, 2005, Landmarc assigned its beneficial interest to La Familia ("La Familia"), which later reassigned it back to Landmarc on August 1, 2005. On that same day, Landmarc assigned its interest to Deem.

¶ 8 Pursuant to their agreement, Sherry paid Shannon $7,000 of the $25,000 owed on May 20, 2005. When Sherry did not pay the remaining balance, Shannon instituted probate proceedings to be appointed Personal Representative ("PR") of Olson's estate. Shannon was appointed PR on September 28, 2005, and sought to recover the home from Sherry on behalf of the estate. In November 2005, the trial court held an evidentiary hearing regarding who had legal title to the property. The court determined that the Affidavit was based on false statements and was ineffective to transfer title to Sherry. The court ordered Sherry to return the home to the estate.

¶ 9 Shannon, in her capacity as PR, also brought a claim against Landmarc, First American, Deem, and La Familia,[5] asking the court to invalidate Sherry's deed of trust. The parties contested the action and alleged they were protected by A.R.S. §§ 14–3910 (2005) and 14–3972 (2005) or, in the alternative, counterclaimed under an equitable sub-

---

1. Real property can be transferred by affidavit outside of probate by persons claiming to be a successor in interest if certain criteria are met, including: (1) a personal representative has not been appointed; (2) at least six months have passed after the decedent's death; (3) the property value does not exceed $50,000; and (4) no other person has a right to the property. Additionally, "any false statement in the affidavit may subject the person or persons to penalties relating to perjury and subornation of perjury." A.R.S. § 14–3971(E). The most recent version of the statute (Supp.2009) changes the $50,000 amount to $75,000, but the 2005 version applies to this case.

2. Shannon claims that First American recorded a copy of Olson's Death Certificate, which mentioned her sibling Todd in connection with closing escrow on the loan. She asserts that this proves First American had actual knowledge that

the Affidavit contained false statements. She also contends that Landmarc had constructive notice of the information, citing *Hall v. World S & L Ass'n*, which held that since the title company is the lender's agent, the lender is charged with knowledge that the title company obtained while acting as escrow agent. 189 Ariz. 495, 501, 943 P.2d 855, 861 (App.1997).

3. On March 10, 2005, Pinnacle Peak Appraisal (hired by Landmarc), appraised the home at $244,000. At this time, the home had mortgage debt of approximately $78,000.

4. The record indicates that while Olson's original will was not located, both Sherry and Shannon had copies of it.

5. Pursuant to the stipulation of the parties, La Familia was dismissed from this action without prejudice.

rogation theory for a lien equivalent to the amount necessary to satisfy the Midland mortgage. Shannon and Landmarc filed cross-motions for summary judgment. In her motion, Shannon argued that Sherry did not have legal title to transfer the deed of trust to Landmarc and, thus, the deed was invalid. Landmarc argued the deed of trust was valid because A.R.S. §§ 14–3910 and 14–3972 protect lenders from claims that the borrower did not have legal title.

¶ 10 The trial court granted Shannon's Motion for Summary Judgment, declared the deed of trust to be invalid, and awarded attorneys' fees and costs to the estate pursuant to A.R.S. § 33–420 (2007). The court also declared that Landmarc had an equitable lien against the property in the amount of $76,786.00. We have jurisdiction pursuant to A.R.S. §§ 12–1837 (2003) and 12–2101(B), (J) (2003).

## DISCUSSION

¶ 11 Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz.R.Civ.P. 56(c). A motion for summary judgment should be granted "if the facts produced in support of the claim ... have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim...." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In reviewing a grant of summary judgment, "we view the facts in the light most favorable to the party against whom judgment was entered." *Great Am. Mortgage, Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124, 938 P.2d 1124, 1125 (App. 1997). We determine de novo whether any genuine issues of material fact exist and whether the superior court erred in applying the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App. 2000). Statutory interpretation matters are questions of law which we review de novo. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8, 119 P.3d 1034, 1036 (App. 2005).

## I. Validity of Deem's Beneficial Interest

¶ 12 Appellants argue that Arizona's statutory protections for purchasers who rely on transfer affidavits require us to reverse the trial court's grant of Shannon's summary judgment motion and remand with instructions that the trial court hold that the deed is valid and that although title to the property belongs to the estate, it is subject to Deem's deed of trust. They also argue that this court's decision in *In re Estate of Parker*, 217 Ariz. 563, 177 P.3d 305 (App.2008), requires reversal of the trial court's decision. Conversely, Shannon argues that Appellants are not entitled to the statutory protections because Landmarc gained its beneficial interest by fraudulently procuring the transfer Affidavit or accepting the beneficial interest in exchange for the loan even though it knew the Affidavit contained false statements.[6]

¶ 13 Arizona Revised Statutes §§ 14–3972(C) and 14–3910 provide:

> A purchaser of real property from or lender to the person or persons designated as successor or successors in a certified copy of an affidavit issued under § 14–3971 ... *is entitled to the same protection as a person purchasing from or lending to* a distributee who has received a deed of distribution from a personal representative as provided in § 14–3910.

A.R.S. § 14–3972(C) (emphasis added).

> If property distributed in kind or a *security interest* therein is acquired for value by a purchaser from or lender to a distributee who has received an instrument or deed of distribution from the personal representative, or *is so acquired by a purchaser from or lender to a transferee from such distributee, the purchaser or lender takes title free of rights of any person interested in the estate and incurs no personal liability to the estate, whether or not the distribution was proper* ... [t]o be protected under this provision, a purchaser or lender need not inquire whether a personal representative acted properly in making the distribution in kind....

6. Sherry testified that Landmarc and Sobol knew all three statements were false.

A.R.S. § 14–3910 (emphasis added). This court has interpreted the plain language of §§ 14–3972(C) and –3910 to mean that although § 14–3910 makes no specific mention of its application to affidavit transferees, affidavit transferees, like distributee transferees, will take title free of any estate interest and personal liability even if the transfer was improper. *Parker*, 217 Ariz. at 567, ¶ 17, 177 P.3d at 309.[7]

¶ 14 In *Parker*, decedent Warren Parker established a trust consisting of "his sole and separate property" for his two adult children from a previous marriage. *Id.* at 564, ¶ 2, 177 P.3d at 306. At the same time, his wife signed a disclaimer deed which stated she had no past or present interest in or right to the trust property. *Id.* Parker later removed the property from the trust and returned it to himself. *Id.* at ¶¶ 4–5. Under his will, any separate property would pass to the trust. *Id.* at ¶ 3.

¶ 15 After Parker's death, his wife filed an Affidavit for Transfer of Title to Real Property, stating that he died intestate and she was the sole successor to the property. *Id.* at 564–65, ¶ 5, 177 P.3d at 306–07. She transferred the deed of trust to Choice Investments, L.L.C. ("Choice") and Choice later deeded the property to Dometri Investments, L.L.C. ("Dometri"). *Id.* at 565, ¶ 6, 177 P.3d at 307. Parker's adult daughter (one of the trust beneficiaries) objected to the transfer in court and Dometri filed an action to quiet title. *Id.* at ¶¶ 7–8. Both parties filed cross-motions for summary judgment and the trial court granted Dometri's motion and awarded its attorneys' fees and costs. *Id.* at ¶¶ 9–10. This court affirmed, holding that the subsequent purchaser, Dometri, was statutorily relieved of liability to the estate because the daughter made no claims that implicated wrongdoing by Choice or Dometri in the procurement or conveyance of property. This court said:

> Given the plain, clear wording of A.R.S. §§ 14–3972(C), 14–3910, and 14–1106, a purchaser of real property relying upon an affidavit of succession is protected from subsequent claims by heirs or devisees who would otherwise have a superior right to the property, even if the affidavit of succession includes false or inaccurate information. *Thus, because Lind did not raise a genuine issue of material fact that implicated Dometri in any fraud below or during oral argument, summary judgment in favor of Dometri was proper.* While Lind may have some recourse against Mrs. Parker or others for any alleged fraud or other wrongdoing, Dometri is statutorily relieved of any liability to the estate.

*Id.* at 567–68, ¶ 22, 177 P.3d at 309–10 (emphasis added).

¶ 16 We agree with Appellants that Deem's position in this case is analogous to Dometri's position in *Parker*. Arizona Revised Statutes sections 14–3910 and 14–3972 provide broad protection for purchasers of property interests who rely on an affidavit of succession, even where the affidavit contains false or inaccurate information.

¶ 17 Shannon argues Deem did not purchase from or lend to Sherry, so the protections of § 14–3972(C) do not apply. We disagree. Although § 14–3972(C) specifically protects purchasers and lenders, the scope of that protection is defined by incorporating the terms of § 14–3910. That section protects purchasers of property or of security interests in property received by a distributee from a personal representative through a deed of distribution. Given that the affidavit process of §§ 14–3971 and –3972 is intended to be a simplified means of transferring property without the appointment of a personal representative, we see no reason to give transferees of property acquired by affidavit less protection than if the property was acquired by a deed of distribution. Therefore, reading §§ 14–3910 and 14–3972(C) together, we find that Deem's interest is protected.

¶ 18 *Parker* emphasized that summary judgment in favor of the successive purchas-

---

7. "[T]he plain language of A.R.S. §§ 14–3972(C) and 14–3910 clearly provides that a purchaser relying upon an affidavit of succession meeting the requirements of A.R.S. § 14–3971(E) takes title 'free of rights of any person interested in the estate,' regardless of the propriety of the sale." *Parker*, 217 Ariz. at 567, ¶ 17, 177 P.3d at 309.

er was appropriate because there was no evidence of fraud on the part of Choice or Dometri at any time. In contrast, the case at hand contains evidence suggesting that Landmarc, through its representatives, engaged in fraudulent activity. Here, however, Deem currently holds the beneficial interest and Shannon has presented no evidence of fraud on the part of Deem. Therefore, we find that Deem has a valid beneficial interest in the property and the trial court should have granted summary judgment in Appellants' favor.

¶ 19 *Parker* also declined to judicially create protections for heirs and devisees who are victims of fraudulent transfers, noting that it is within the province of the Legislature to implement statutory safeguards to prevent the solicitation of fraudulent affidavits of succession. *Id.* at 569, ¶ 29, 177 P.3d at 311. We agree.

¶ 20 Shannon had several opportunities to protect her interest in the property. She had six months to open probate before Sherry could complete and file the transfer affidavit. *See* A.R.S. § 14–3971(E). Shannon also could have requested to be paid out of the Landmarc refinancing proceeds. When she waived her interest in the property in exchange for $25,000, she could have required Sherry to give her a first priority lien. Instead, she waited to open probate until nearly two years after her father's death. She testified she would not have initiated probate proceedings had Sherry paid her the remaining balance on their agreement. Therefore, her proper recourse is against Sherry.

## II. Attorneys' Fees and Costs

■ ¶ 21 Both parties have requested attorneys' fees and costs incurred in this matter. Although Appellants are the prevailing party on appeal, for the following reasons we decline to grant Appellants' request for attorneys' fees and costs.

¶ 22 Appellants have requested attorneys' fees and costs pursuant to A.R.S. §§ 12–341.01(A) (2003), 33–420 (2007), and 33–806(B) (2007). Section 12–341.01 is inapplicable here because the "arising out of a contract" language does not apply where, as here, the prevailing party has requested statutory relief. The issue decided in this case is not the validity of the deed itself, but whether Deem's interest is protected under A.R.S. §§ 14–3972 and 14–3910. Moreover, neither the estate nor Deem were parties to the original deed of trust.

¶ 23 Section 33–420 provides for a mandatory award of fees in favor of the owner or beneficial title holder of real property if successful under the statute. This court has determined that a beneficiary under a deed of trust is a "beneficial title holder" and has standing to sue when a wrongful document[8] is filed against it. *See Hatch Co. Contracting, Inc. v. Ariz. Bank,* 170 Ariz. 553, 556, 826 P.2d 1179, 1182 (App.1991) ("It appears that in using the phrase 'owner or beneficial title holder' in A.R.S. § 33–420, the legislature sought to encompass all persons or entities holding legal or beneficial title to property."). Thus, Deem is the beneficial title holder and would have standing to sue if a wrongful document (as defined in § 33–420(A) or (B) ) was filed against it. Although the trial court determined that Sherry filed a fraudulent affidavit to obtain title to the property, she is not a party to this action and there has been no determination of fraudulent activity by any of the parties in this action. Therefore, Appellants are not entitled to recover attorneys' fees and costs under this section.

■ ¶ 24 Section 33–806(B) states that a prevailing party can recover attorneys' fees "to prevent ... [i]mpairment of the security provided by the trust deed."[9] This court, however, has determined "impairment of the security" means damage to the property that is the subject of the security interest. *See*

---

8. For example, filing a lien known to be invalid. *See Performance Funding, L.L.C. v. Ariz. Pipe Trade Trust Funds,* 203 Ariz. 21, 28, ¶ 31, 49 P.3d 293, 300 (App.2002).

9. The section also allows recovery for (1) "[p]hysical abuse to or destruction of the trust property, or any portion thereof" and (2) waste. "Recovery of damages under this section shall be limited to damages or injuries incurred during the time the trustor is in possession or control of the trust property." A.R.S. § 33–806(B).

*Republic Nat'l Bank of New York v. Pima County*, 200 Ariz. 199, 203, ¶¶ 12–13, 25 P.3d 1, 5 (App.2001) ("Furthermore, this result [allowing a cause of action against a third party who damages trust property] is in keeping with the rule at common law that 'an action may be maintained by a mortgagee against a third person *who impairs his or her security by damaging the mortgaged property.'* ") (citations omitted) (emphasis added). We interpret this statute to mean that there must be some evidence that a security interest has been impaired by damage, waste, destruction, or negligent maintenance to recover attorneys' fees and costs under this section. Thus, because there is no evidence that Appellee caused damage to the property, Appellants' security interest was not impaired and they are not entitled to recover attorneys' fees and costs under § 33–806.

### CONCLUSION

¶ 25 For the foregoing reasons, we hold the trial court erred by entering summary judgment in favor of Shannon. The court's judgment is reversed and this matter is remanded with instructions to enter summary judgment in favor of Appellants. We vacate the trial court's grant of Shannon's attorneys' fees and costs as well as Landmarc's equitable lien on the property. We decline to grant Appellants attorneys' fees on appeal.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and JON W. THOMPSON, Judge.